The Yates County National Bank, Respondent, *v.* Zeno T. Carpenter, Impleaded, etc., Appellant.

Under the provision of the Code of Civil Procedure (§ 1393) exempting pensions granted by the United States or a state for military or naval services from levy and sale on execution, where the receipts from a pension can be directly traced to the purchase of property necessary or convenient for the support and maintenance of the pensioner and his family, such property is exempt.

Where, therefore, a pensioner who had a wife and family purchased a house and lot for a home, paying a portion of the purchase-price out of the proceeds of a pension certificate, and giving a mortgage on the premises to secure the balance, *held*, that the premises were exempt from levy and sale on execution.

*Wygant* v. *Smith* (2 Lans. 185), distinguished and limited.

*It seems* that where pension moneys have been embarked in business and mingled with other funds so as to be incapable of identification or separation, the pensioner loses the benefit of the exemption.

*Yates County National Bank* v. *Carpenter* (49 Hun, 40), reversed.

(Argued February 24, 1890 ; decided March 18, 1890.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made the first Tuesday of June, 1888, which reversed an order of the County Court of Yates county, releasing, discharging and setting aside a levy upon execution on certain real property of the defendant Zeno T. Carpenter.

The facts, so far as material, are stated in the opinion.

*Arthur C. Smith* for appellant. The home bought by the pensioner with his pension money is exempt from levy and sale under an execution. (Code Civ. Pro. § 1363 ; *Stockwell* v. *Nat. Bank*, 36 Hun, 583 ; *Burgett* v. *Fancher*, 35 id. 647 ; *Tillotson* v. *Wolcott*, 48 N. Y. 188 ; *Whiting* v. *Barrett*, 7 Lans. 106.)

*William T. Morris* for respondent. The exemption of property from liability for the payment of debts is a creature of the statute. *Prima facie* all property of a person against whom an execution has been issued may be levied on and sold, and the burden is upon the person claiming exemption to bring himself and property within the exception of the statute. (*Baker* v. *Brintnall*, 52 Barb. 188.) The Revised Statutes of the United States protects pensions only in the course of transmission. (U. S. R. S. § 4747 ; *Stockwell* v. *Nat. Bank*, 36 Hun, 584 ; *Burgett* v. *Fancher*, 35 id. 650.) Where the language of a statute is explicit, the courts are bound to seek for it in the words of the act, and are not at liberty to sup-

552      Y. C. N. Bank *v.* Carpenter.      [Mar.,

Opinion of the Court, per. Ruger, Ch. J.

pose that it intends anything different from what the language imports. (Sedg. on Const. & Stat. Law, 380, 382, 383.) The exemption of pensions from levy under an execution does not apply or extend to property not exempt from levy and sale purchased with pension money. ( *Wygant* v. *Smith*, 2 Lans. 185; *Youmans* v. *Boonhaver*, 3 T. & C. 24; *Burgett* v. *Fancher*, 35 Hun, 650.)

Ruger, Ch. J. In March, 1882, the Yates County National Bank recovered a judgment in Justice's Court against Zeno T. Carpenter and others, for about $111, and caused a transcript thereof to be filed in the county clerk's office, July 17, 1884. In June, 1884, the United States government issued and delivered an invalid pension certificate to Zeno T. Carpenter, as a soldier in the United States army, which was deposited by him in the First National Bank of Yates county, for collection, in July, 1884. In October, 1884, Carpenter purchased and took a conveyance of a dwelling-house and lot in the village of Penn Yan, his place of residence, from one Hurford, for $1,300, paying the sum of $700 cash upon the purchase-price, and securing the balance by a mortgage to the grantor upon said lot. The cash payment was made from moneys received by him from the First National Bank, as part of the collection of his pension certificate. Carpenter was a married man, having a wife and five infant children, and the house and lot were purchased for the purpose of securing a home for himself and family. He had no other means, or property, liable for the payment of debts. In February, 1885, the Yates County National Bank caused an execution upon such judgment to be issued and levied upon said house and lot, and advertised the interest of said Carpenter therein for sale at public auction to satisfy said execution.

Upon proof of these facts Carpenter moved the County Court for an order setting aside the levy and enjoining the plaintiff from taking any proceedings to enforce said execution by the sale of said real estate, upon the ground that such property was exempt from levy and sale upon execution.

That court granted the order asked for; but, upon appeal to the General Term, this order was reversed and such motion was denied. The defendant, Carpenter, appeals to this court from the order of reversal.

At the time of the levy, the only interest Carpenter had in such real estate was an equity of redemption, which we must assume, on the facts in this case, did not exceed in value the sum paid for it, and it, therefore, represents, to the extent of his interest, the proceeds of his pension. Was this interest liable to levy and sale on execution? The plaintiff insists that it is, and such is the judgment of the court below. The question presented involves the construction of section 1393 of the Code of Civil Procedure, which, so far as the matter here concerned is affected, reads as follows: "A pension heretofore or hereafter granted by the United States  *  *  *  for military  *  *  *  services  *  *  *  is also exempt from levy and sale by virtue of an execution, and from seizure for non-payment of taxes, or in any other legal proceeding." That statutes of this character are to be liberally construed, with the view of promoting the objects of the legislation, is established by a uniform course of authority; and that their force and effect are not to be confined to the literal terms of the act, has also been held in numerous cases. In *Hudson* v. *Plets* (11 Paige, 180), it was held that a creditor's bill would not reach the right of action of a judgment debtor for the conversion of exempt property. In *Andrews* v. *Rowan* (28 How. Pr. 126), it was held that a receiver of the property of a debtor, appointed in supplementary proceedings, did not take a claim or a judgment thereon, for damages accruing to such debtor from one who had wrongfully taken and sold his exempt property on execution for debt. Justice Grover, writing the opinion of the Supreme Court in that case, says: "If the judgment rendered for the injury may be acquired by a judgment creditor, by proceedings supplemental to execution, there would be nothing to prevent seizing exempt property, selling it upon execution, and, when the debtor had sued and recovered a judgment therefor, compelling the application

of such judgment to the payment of the debt for which the property was seized, thus entirely depriving the debtor of the exemption, and enabling the creditor, in this way, to collect his debt from property that the law has declared not liable for its payment." The only case in this court bearing upon the subject is that of *Tillotson* v. *Wolcott* (48 N. Y. 188), where it was held that the exemption of a team, provided for a householder, should also apply to a judgment recovered by such householder against one who had tortiously taken and converted it to his own use. It was said by the court that " the judgment, when recovered by the debtor for the wrongful invasion of his privilege of the exemption of his property from levy and sale, represents the property for the value of which it was recovered." While the language of the statute did not, in terms, cover a judgment, it was held that it came within its spirit and could not be taken by creditors. The opinion of Justice Grover in *Andrews* v. *Rowan* (28 How. Pr. 126) is referred to and approved in the opinion of Judge Leonard.

The general exemption laws of the state provide for the protection of specific articles or classes of property with a view of alleviating the condition of the poor by securing to them the use or consumption of the property exempted; but the present law has departed from the ordinary form of exemption, and, while seeking to accomplish the same object, provides, in terms, for the exemption of money or its equivalent. It is quite obvious that such an exemption can produce no beneficial effect, unless it is extended beyond the letter of the act, and given life and force, according to its evident spirit and meaning. Like other statutes, the section in question must be construed according to the meaning and intent of the law-makers, and so as to effectuate their intention, so far as the language of the act will permit it to be done. Did the legislature intend to limit the force of their exemption to a pension, so long only as it remained an obligation of the government, or consisted of cash in the hands of the pensioner; or did they also intend to protect it after it had been expended in the pur-

chase of articles of property designed to administer to the comfort and support of such pensioner and his family? If the latter was not intended, we must ascribe to the law-makers the absurd intention of granting pensions for the purpose of satisfying claims against pensioners, and not to provide for the care and comfort of invalid or aged soldiers. If the soldier is not protected in the act of exchanging his pension for the necessaries of life, its only effect would be to enable his creditors to take it in satisfaction of their claims. No benefit is conferred if the protection is not extended beyond the possession of the money itself, for its only value consists in its purchasing power, and if the soldier is deprived of that, the pension might as well, so far as he is concerned, have remained ungranted. The plain purpose of the act was to promote the comfort of the soldier; to secure to him the bounty of the government, free from the claims of creditors, and to insure him and his family a safe, although modest maintenance, so long as their needs required it. In the case of an exemption of specific articles from levy and sale upon execution, it seems to be well settled that it extends not only to the protection of such articles while in use or possession, but also to any claim arising out of their conversion by a wrong doer, or their destruction by fire, or otherwise, when insured. (Freeman on Executions, § 235.) The rule seems to be just and reasonable, and within the spirit of the exemption. In the case of the exemption of money, or its equivalent, there has been some controversy in the courts with reference to the extent to which the exemption shall be carried. In such case it is somewhat difficult to lay down a rule in precise terms, by which it may be determined in all cases, what property is liable, and what exempt from levy and seizure upon legal process for the payment of debts; but we entertain no doubt that where the receipts from a pension can be directly traced to the purchase of property, necessary or convenient for the support and maintenance of the pensioner and his family, such property is exempt under the provisions of this statute. Where such moneys can be clearly identified and are used in the purchase of necessary articles,

or are loaned or invested for purposes of increase or safety, in such form as to secure their available use for the benefit of the pensioner in time of need, we do not doubt but that they come within the meaning of the statute; but where they have been embarked in trade, commerce, or speculation, and become mingled with other funds so as to be incapable of identification, or separation, we do not doubt but that the pensioner loses the benefit of the statutory exemption. These propositions, we think, are fully supported by the cases in this and other states. (See Freeman on Executions, § 235, tit. " Proceeds of Exempt Property.")

In *Burgett* v. *Fancher* (35 Hun, 647) and *Stockwell* v. *Bk. of Malone* (36 Hun, 583), it was held that moneys received from a pension and deposited in a bank in the name of the pensioner, were not subject to proceedings on the part of creditors to have them applied in payment of debts, although the relations between the depositor and the bank were those of creditor and debtor. The debt represented the pension, and that was exempted by the statute. The case of *Wygant* v. *Smith* (2 Lans. 185), when limited, as it must be, to the facts appearing in the case, is not an authority for the plaintiff here. In that case the pensioner had embarked his pension in business or trade, and in some transactions had made a profit. It was impossible to identify the fund in the various articles of property in which, through numerous and successive changes, it had become invested, and it was held that the pensioner had lost his right of exemption.

The order of the General Term should be reversed, and that of the County Court affirmed, with costs to defendant in all courts.

All concur.

Ordered accordingly.