Findings and a decree may be prepared accordingly, and, if not assented to as to form, settled before me upon a notice of two days.

---

(15 Misc. Rep. 159.)

ST. LAWRENCE STATE HOSPITAL v. FOWLER.

(Court of Sessions, Lewis County. December, 1895.)

PENSION—EXEMPTIONS—SUPPORT OF INSANE ADULT SON.

Under Code Civ. Proc. § 1393, providing that a pension for military services is "exempt from levy and sale * * * and from seizure for nonpayment of taxes or in any other legal proceeding," pension moneys, which compose the entire property of a father, cannot be subjected to the maintenance of an insane son, who is being cared for at the expense of the state, though Code Cr. Proc. § 915, provides that, where a relative, of sufficient ability, fails to maintain a poor person, the proper authorities may apply for an order to compel such relief.

Application by the St. Lawrence State Hospital against Frederick Fowler, committee of the person and property of Christian

Holsworth, for an order fixing the value of the support and maintenance of John Holsworth, and to direct the payment of the sum so determined.   Dismissed.

Mullin, Griffin & Walker, for the application.
T. M. Reed, opposed.

TURNER, J.   This is an application for an order to fix the value of the support and maintenance of John Holsworth, a patient in St. Lawrence State Hospital, and to direct Frederick Fowler, as the committee of the person and property of one Christian Holsworth, who is the father of said John Holsworth, to pay the sum so determined to the treasurer of said hospital.

John Holsworth became insane in 1881, was sent to the Utica asylum, and returned to the county house, at Lowville, in 1885, and remained there until December, 1890, when he was taken to St. Lawrence State Hospital by order of the state commission in lunacy.   He was never married, never had any property, and was admitted to the county house, at Lowville, as a pauper.   Christian Holsworth, his father, a man about 63 years old, became insane in 1871 or 1872, and was sent from Lewis county to the Utica asylum, then having a wife and family dependent upon him, and having substantially no property.   From the time he was first sent to the asylum, until 1889, he was supported by the county or town of which he was a resident, and during a portion of the time his family received support from the public authorities.   In 1889 he received a pension from the United States government, and in 1890 he was removed from the county house in Lowville, and, being still insane, has ever since been cared for by his wife and son at a private house in Lowville, the expense of such support and maintenance being paid by Frederick Fowler, who was duly appointed committee of his person and property by the county court of Lewis county in 1888.   The pension, when received, in 1889, amounted to the sum of $12,979.90 for arrearages, and his committee draws, in addition thereto, the sum of $72 per month as monthly pension. The expense of the support and maintenance of Christian Holsworth for the year 1894 was the sum of $1,025.25, as shown by the filed report of the committee; and that sum is about the average amount which has been expended for Holsworth's support and maintenance since the reception of his pension.   The amount now in the hands of said committee is the sum of $15,000, which is in mortgages, mainly, and a few notes, bearing annual interest at about 5 per cent., and yielding an annual income of from $1,200 to near $1,600, including the pension receipts of $72 per month.   The said Christian Holsworth has no other property except this pension money, and none other, except pension money, belonging to him, has been received or is held by his committee.

It appears, from the evidence, that the committee has used the income from the investment as it accrued for the annual support and maintenance of Holsworth, together with so much of the quarterly receipts of pension as was necessary for that purpose,

and has added the balance or surplus of such quarterly pension moneys to the principal in his hands, which is now invested, and which makes the fund of $15,000. It was conceded, on the trial, that the cost of supporting and maintaining the son, John Holsworth, at the St. Lawrence State Hospital was the weekly sum of $3.75. The state hospital contends that, under the provisions of sections 12 and 13 of chapter 446 of the Laws of 1874, it has the right to institute proceedings, under section 915 and following section of the Criminal Code, to compel Christian Holsworth, or his property through his committee, to provide for the support and maintenance of his son John at said hospital, and that, pursuant to section 7 of chapter 375 of the Laws of 1887, its treasurer was the proper person to make this application. It was conceded on the trial that a proper notice, as provided in section 915 of the Criminal Code, was duly served more than 10 days prior to the commencement of the term of court at which this application was made.

Notwithstanding the argument of counsel for the hospital as to the liability, under present existing statutes, of every insane person who may be an inmate of said hospital for his own maintenance and expense therein, counsel for the committee raises the objection, and contends, that such a liability for the support and maintenance of the son cannot be sustained or enforced against Christian Holsworth or his property, upon the ground and for the reason that the money in the hands of his committee is wholly pension money.

Section 4747 of the United States Revised Statutes is as follows:

"No sum of money due or to become due to any pensioner shall be liable to attachment, levy or seizure, by or under any legal or equitable process whatever, whether the same remains with the pension office or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto; but shall inure wholly to the benefit of such pensioner."

The statute of this state on this subject is as follows,

"The pay and bounty of a noncommissioned officer, musician or private in the military or naval service of the United States; a land warrant, pension or other reward heretofore or hereafter granted by the United States, or by a state, for military or naval services; a sword, horse, medal, emblem or device of any kind presented as a testimonial for services rendered in the military or naval service of the United States; and the uniform, arms and equipments which were used by a person in that service, are also exempt from levy and sale, by virtue of an execution, and from seizure for nonpayment of taxes, or in any other legal proceeding." Code Civ. Proc. § 1393.

The object of these enactments, both federal and state, is obvious. It was to reward the persons entitled to the bounty, as well as the thanks of the people, of this republic, for past services in its military or naval branches at a time when disunion and disaster threatened the nation, and for disabilities incurred in the line of duty and resulting from such services. The research of counsel upon either side, and the labor of the court, have failed to find a reported case in the books in this state wherein the precise question in this matter has been passed upon by our courts. Hence, we must reason somewhat from analogy.

It must be conceded that, under the provisions of the federal

statute, the pension money is only protected until it reaches the pensioner. The rule, however, in this state, is that pension money and property purchased therewith is exempt from levy and sale under an execution. Bank v. Carpenter, 119 N. Y. 550, 23 N. E. 1108. The statutes of this state exempt from assessment and taxation property which is exempt from levy and sale under an execution. 1 Rev. St. p. 388; 2 Rev. St. (8th Ed.) p. 1083, § 4, subd. 9. It is held that real property which was purchased with pension money is exempt from taxation. People v. Williams, 6 Misc. Rep. 185, 27 N. Y. Supp. 23; In re Murphy, 9 Misc. Rep. 647, 30 N. Y. Supp. 511. But a late case in the supreme court, and not yet officially reported (Toole v. Board, 37 N. Y. Supp. 9), wherein the action was brought to cancel an assessment of taxes upon property purchased with pension money, and to set aside a tax sale of the property, is more decisive on this point. The case was tried before Mr. Justice Vann, who rendered judgment canceling the assessment and vacating the tax sale upon the ground that the property was exempt. In his opinion upon the case the learned justice uses this language:

"The legislature, grateful to the soldiers who so faithfully served the country in its time of need, clearly intended to provide a comfortable support to such as had been wounded, or had become disabled or diseased in the discharge of their duties, by allowing them the use of all pension moneys free from any claim for debt or taxes. A statute with such an object should be so construed as to carry that object into effect, and, without further discussion, it is held that the action of the court of appeals with reference to exemption from sale under execution applies with equal force to exemption from nonpayment of taxes."

In the case at bar, it appears that all the moneys in the hands of the committee of Christian Holsworth are moneys derived from a United States pension, and which have never been mingled with other funds, and which represent, in the securities and in their entirety, only the pension which the United States paid to the pensioner, Holsworth, because of the physical and mental disabilities which came to him as the result of his services as a soldier. It must be held that none of the property now held by the committee for Holsworth can be reached under an execution, and that the same is exempt from assessment and taxation. The exemption from taxation affects the state, and deprives it of revenue therefrom. In other words, the property of Christian Holsworth, now in the hands of his committee, escapes its share of public taxation for the support of the state, and the protection of private property or individual rights, because of existing statutes. The cost of supporting and maintaining his son, John Holsworth, at St. Lawrence State Hospital, is now borne by the state, and the state now asks that said Christian Holsworth be compelled to pay that expense as the father of an insane and pauper son.

It is unquestionably true that the father has failed to relieve and maintain his son, and that he is of sufficient pecuniary ability to do so; but the father is, himself, an incompetent person, and all his property is such only as has been paid to him by the United States government as a pensioner for military services. Can he

now be compelled to support and maintain this son, under the provisions of sections 915 and 916 of the Criminal Code? If so, the provisions of the Criminal Code, under those sections, must be held to annul or override section 1393 of the Code of Civil Procedure. It seems to me that it was the intent of the legislature to exempt the property mentioned in that section of the Civil Code from levy or seizure in any legal proceeding, in order that the person entitled thereto might enjoy, for himself and those dependent upon him, the whole bounty of the government, as evidenced by his pension; and I do not think sections 915 and 916 of the Criminal Code in any way negative that proposition. Without further discusion, it seems to me I must hold that the property of Christian Holsworth is exempt from liability in this matter, for the reason that the same is composed exclusively of pension moneys, or securities representing none but pension moneys, and that, as it appears that said Holsworth has no other property, this application must be denied, and the proceeding dismissed. An order may be entered accordingly, dismissing this matter or proceeding, but without costs.

Proceeding dismissed, without costs.