(35 Misc. Rep. 173.)

In re LIDDLE.

(Surrogate's Court, Washington County. May, 1901.)

1. EXEMPTIONS—REALTY PURCHASED WITH PENSION MONEY.
    Code Civ. Proc. § 1393, exempting pension money from liability for debts, does not render real estate purchased with such money exempt from payment of the pensioner's debts after his death.

2. CLAIMS AGAINST DECEDENT.
    Claims against the estate of a decedent, made by near relatives for personal services, require stronger proof to establish them than ordinary claims by strangers.

Proceeding by Emeline Liddle, executrix of Marvin W. Liddle, deceased, to sell his real estate to pay debts. Decree granted.

Brodie G. Higley, for executrix.
Frank H. Mason, for claimants.
George Scott, for contestant.

DAVIS, S. This is a proceeding instituted by Emeline Liddle, the executrix of the last will and testament of Marvin W. Liddle, deceased, to sell the real estate of the testator to pay debts. On the return of the citation, Frances J. Liddle, the widow of the testator, and who is the sole beneficiary named in the will, filed an answer to the petition, denying the validity of the claims, or some of them, and also alleging that the real estate of the decedent was purchased with pension money, and is, therefore, under section 1393 of the Code of Civil Procedure, exempt from sale for the payments of debts, and moves to have the proceeding dismissed. It is conceded that the real estate, which it is alleged is worth about $600, was purchased entirely with pension moneys, and that there was no personal property in the estate except that set off to the widow by the appraisers, under the statute. The petitioner replies to the answer by setting up the will, which is entirely in manuscript, although not written by the testator himself, in which the testator expressly directs the payment of all his debts. It is claimed by this clause in the will that the testator waived and canceled the exemption. On the other hand, the contestants contend that the clause in the will did not cancel the exemption, as it is not in compliance with section 1404 of the Code, which section provides the only way in which an exemption can be canceled. The question before us for decision then is, does the exemption from debts of property purchased with pension moneys extend beyond the decease of the pensioner? As is usual in cases of this character, the sympathies are with the contestant, but in legal proceedings sympathy must yield to the superior claims of justice and equity. At common law all property is liable for debts and for taxes, and no property is exempt except as some statute specially so provides. It will be observed that there is no statute that exempts from debts real estate purchased with pension moneys. Section 1393 of the Code, on which the contestant in this proceeding relies, exempts only the pension money. In the case of Bank v. Carpenter, 119 N. Y. 550, 23 N. E. 1108, 7 L. R. A. 557, the court of appeals held that where the pension money can be directly traced to the purchase of property necessary for the support of the pensioner and his family, such property is exempt from levy and sale under an execution. In the case just cited the pensioner secured an order from the county court restraining the bank from selling his real estate on an execution, and the court of appeals sustained the order. The case of Buffum v. Forster, 77 Hun, 27, 28 N. Y. Supp. 285, also cited by contestant, was an injunction to restrain the sale of real estate purchased with pension money. The general term held that the injunction was properly granted. Both of the proceedings in the two cases just cited were had during the lifetime of the pensioner, and neither of the cases decides that the exemption extended beyond the lifetime of the pensioner. That question was not before the court in either case.

The industrious and able counsel for the contestant cites us no case that holds that real estate purchased with pension money is exempt from debts after the decease of the pensioner. The case most nearly approaching the doctrine contended for by the contestant's counsel is Hodge v. Leaning, 2 Dem. Sur. 553, in which the surrogate of Otsego county held that pension money in the hands of an executor constituted no part of the assets of the decedent's estate, and hence was not liable for decedent's debts; but that decision was disapproved in the case of Beecher v. Barber, 6 Dem. Sur. 129, where the surrogate of Chenango county refused to follow it, and decided directly the opposite, and holding that on a final judicial settlement pension money in the hands of the executor was assets, and liable for decedent's debts. This must be so upon principle. It is easy to see how absurd and unjust results and hardships would follow if the doctrine contended for by the contestant's counsel in this case was maintained. A pensioner might die, leaving an estate worth $3,000 in pension money, or in property purchased with pension money, and at the same time owing $500 in just debts. If contestant's doctrine is to be sustained, the creditors must lose their debts, although the estate is ample to pay them. Indeed, if such were the law, a pensioner might have to be buried at public expense, or by the charity of his friends. Clearly neither the legislature by its enactments, nor courts by their decisions, ever intended any such results. They have shown great liberality and justice towards the soldier and his family, but have not gone to the lengths contended for by the contestant in this case. It is unthinkable that the pensioner in this case intended to so fix his property that his just debts—expenses of his last sickness and burial—should not be paid out of his estate. Being a pensioner, he doubtless knew what exemptions might be claimed for his estate, and for that reason had the clause directing the payment of his debts inserted in his will so as to avoid the very results here threatened. Ordinarily, it may be true, as argued by the counsel, that the clause in a will directing payment of debts is merely formal, and practically means nothing, for the just debts of a decedent, under ordinary circumstances, must be paid if there is property, whether the will so directs or not. It is further contended in this case that, notwithstanding the clause in the will directing payment of debts, the executrix has no power to sell the real estate, and apply the proceeds to their payment; and cites In re City of Rochester, 110 N. Y. 159, 17 N. E. 740. It is true that the mere formal direction in a will to pay debts does not per se give an executor power upon his own motion to sell the real estate of his testator, give an executor's deed, and apply the proceeds to the payment of decedent's debts. In such a case the creditor must resort to the usual statutory proceeding to enforce the payment of his claim. The executrix in this case has not attempted to sell the real estate, except upon the decree of the court. There is nothing in this proceeding in conflict with what was decided in Hamilton v. Smith (In re City of Rochester), supra. It is immaterial with the executrix here whether these claims are paid or not. The several claims as filed are in

due form, and upon their face apparently valid. They are objected to by the widow, who is the sole beneficiary in the will, so this contest is really between the creditors and the widow. The object of the executrix in this proceeding is to obtain a decision of the court as to the validity of these claims, and as to the liability of the estate to pay them if declared valid, and a decree granted directing their payment, to the end that upon the final judicial settlement of the estate her account may not be surcharged for the payment of debts that are invalid, nor involve the estate in litigation for refusing to pay claims that are valid.

Of the several claims filed with the executrix against the estate, four are objected to and contested, to wit: Warren Coomer, $15; Addie E. Mabee, $24; Elizabeth Carter, $56.58; Sarah J. Monroe, $259. Two of these claimants are sisters, one a niece, the other a nephew, of the decedent. The greater portion of these claims is for taking care of decedent in his last sickness, and for services rendered as housekeeper for decedent in former years. The rule in regard to such claims is too well settled to require the citing of authorities that claims against the estate of a deceased person made by near relatives for personal services rendered in the last sickness, and for domestic services in the deceased's household, are to be regarded with suspicion, and require stronger proof to establish them than ordinary claims made by strangers. A large amount of testimony was taken in relation to the validity of these claims, and, without discussing the testimony in detail as it relates to the several items, I think the proof is insufficient under the law to establish them all as legal claims against the estate. The claim of Warren Coomer is rejected. The affidavit attached to that claim as filed is fatally defective, in that it does not conform to the statutory requirements, and the proof in relation to this claim does not cure the defect in the affidavit, nor establish the claim. The claim of Addie E. Mabee is allowed to the extent of $14, Sarah J. Monroe in the sum of $16, and Elizabeth Carter's claim of $56.58 is allowed in full; with interest upon the several claims as allowed. Contestant's motion to dismiss the proceeding is denied. Counsel for the executrix may prepare and submit a proposed form of decree, in accordance with this opinion. Decreed accordingly.