## SMITH v. BLOOD et al.

(Supreme Court, Appellate Division, Third Department. June 29, 1905.)

1. ESTATE OF DECEDENT—SALE OF LAND—COLLATERAL ATTACK.

Code Civ. Proc. § 2473, provided that, where the jurisdiction of a Surrogate's Court to make a decree is drawn in question collaterally, and the necessary parties were cited or appeared, jurisdiction is presumptively, and, in the absence of fraud or collusion, conclusively, established by allegations of the jurisdictional facts contained in a petition or answer used in the Surrogate's Court. By section 2474 an objection to a surrogate's decree founded on any omission in the papers is available only on appeal, and by section 2763, as amended by Laws 1904, p. 1911, c. 750, the title of a purchaser in good faith at a sale under a surrogate's decree is not affected where the petition was duly presented, and the proper persons cited by any omission, error, defect, or irregularity occurring between the return of the citation and the decree, except so far as the same would affect the title of a purchaser at a sale made pursuant to the direction contained in a judgment rendered by the Supreme Court. *Held* that, where a petition for the sale of lands of a decedent for payment of debts contained all the facts required to be stated therein by Code Civ. Proc. § 2752, and none of the minor heirs of decedent had a general guardian, and it appeared in the decree that an order had been made appointing a special guardian, but no such order appeared in the record, no fraud or collusion being shown, the decree for sale could not be attacked collaterally as against a bona fide purchaser.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 1554.]

2. EXEMPTIONS—PENSION MONEY—PURCHASE OF REAL ESTATE—DEATH OF PENSIONER—LIABILITY OF LAND FOR DEBTS.

Code Civ. Proc. § 2749, provides that the real estate of a decedent is liable for debts except where * * * it is exempt from levy and sale by virtue of an execution as prescribed in title 2, c. 13; and section 1393 of such title and chapter exempts a pension granted for military services rendered the United States. *Held* that, where real estate was purchased by a pensioner with his pension money, it was liable after his death to sale for debts.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Exemptions, § 80.]

3. SAME—PROCEEDINGS TO SELL LAND—EXEMPTION—FAILURE TO ASSERT EXEMPTION.

Where, in proceedings to sell the lands of a decedent for the payment of debts, the widow and heirs at law, who had an opportunity, did not assert an exemption on the ground that the property was purchased with pension money, as against an innocent purchaser they could not in a collateral proceeding deny his title on the ground of the exemption.

Appeal from Trial Term, Montgomery County.

Action by Sarah L. Smith against Sarah C. Blood and others. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

William H. Blood received a pension granted to him by the United States for military services. In 1888 he purchased a house and lot in Amsterdam, and paid therefor the sum of $1,200. It is claimed that the payment was made from the money received by him from said pension. On the 1st day of March, 1889, he died intestate, the owner in fee of said real property, leaving a widow and eight children, six of whom were minors. The property was then incumbered by a mortgage of $700. An administrator of his goods, chattels, and credits was thereafter appointed, but no personal property was found. On the petition of such administrator said property was sold for the payment of debts. The sale was at public auction, and the property was purchased by

the defendant John M. Marshall for $1,075, from which was deducted the amount of said mortgage, and he paid the difference in cash. Said John M. Marshall did not have notice or knowledge that said property had been purchased with pension money, or that it was claimed that there were any errors, defects, or omissions in the proceedings to sell said property. Said widow and children remained in possession of said property until the 1st day of November, 1890, when said Marshall stated to them that he had purchased the house, and that they must pay rent or move out; and they moved out, and said Marshall went into possession of the property, and remained in possession thereof until February 22, 1897. He then sold said property to the defendant William H. Marshall, who purchased the same without notice or knowledge that it had been purchased by said Blood with pension money, and without notice or knowledge that it was claimed that there were any errors, defects, or omissions in the proceedings for the sale thereof. He went into possession of said property, and remains in possession thereof. The plaintiff, who was one of the children of said William H. Blood, was at the time of his death about 13 years of age. In August, 1904—more than 15 years after her father's death, and nearly 14 years after the sale of said property at auction under said proceeding—she commenced this action to partition said property, making her mother and her brothers and sisters, and also the administrator of her father's estate, and the said Marshalls, and a subsequent bona fide mortgagee under the defendant John M. Marshall, parties defendant, asking that they be barred from all interest in said property, and for a division of the proceeds of the sale of said property among the widow and heirs at law of her father. It is conceded that the proceedings for the sale of said property were regular, and in every respect in accordance with the statutes in relation thereto, if the court obtained jurisdiction of the subject-matter and of the persons of said widow and heirs at law.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

J. W. Eighmy, for appellant.

Nisbet & Hanson (Charles S. Nisbet, of counsel), for respondents Marshalls and Cocoro.

CHASE, J. Over one year after the death of William H. Blood, the defendant James E. Marshall, being a creditor of the deceased, presented to the Surrogate's Court a petition in the form prescribed by statute, asking that letters of administration be granted to him, and that a citation issue to all persons having a right to administration prior or equal to that of the petitioner. A citation was issued accordingly, and duly served upon the widow and children of said deceased. On the return day of said citation there was filed in the Surrogate's Court, by a competent and responsible person, a written consent to appear as special guardian of said infants, and a decree was entered reciting the filing of the petition, the issuing of the citation, and that "on reading and filing proof of service thereof, A. B. Flansburgh appearing for the petitioner, J. W. Eighmy appearing for Sarah C. Blood, Ed. J. Perkins appearing as special guardian for Sarah, Annie, Harry, Nellie, and William, infants, and on reading and filing the bond executed by said petitioner," etc. The decree ordered that letters of administration be granted to said James E. Marshall, and letters were on that day issued accordingly. It does not appear upon whose application the special guardian was appointed, or that a formal order of appointment was filed in the Surrogate's Court. No personal property being found, the

administrator thereafter filed in the Surrogate's Court a petition praying for a decree directing the disposition by sale, mortgage, or lease of the real property of the decedent, or so much thereof as is necessary for the payment of his debts. Such petition contained all the facts required to be stated therein by section 2752 of the Code of Civil Procedure. A citation was thereupon issued, which was directed to and duly served upon the widow and heirs at law of the intestate. None of the heirs at law who were under 21 years of age had a general guardian, and on the return day of said citation there was filed in the Surrogate's Court, by a competent and responsible person, a written consent to appear as special guardian for said infants. In the decree entered thereafter it was recited:

"Said citation having been returned .* * * with proof of due service thereof on each of the persons therein named, and said surrogate having, by order duly made and entered herein on the 2d day of August, 1890, appointed H. V. Borst, a counselor at law, special guardian for the minors, Nellie Blood, Sarah Blood, Harry Blood, Annie Blood, William Blood, Leonia Blood, for the protection of their interests herein, and the said James E. Marshall having appeared in person and by A. B. Flansburgh, his attorney and counsel, and Sarah C. Blood, widow of said decedent, having also appeared by J. W. Eighmy, her attorney and counsel, and the said guardian having appeared in person, and the proper proceedings in due form of law having been thereupon had, and no one appearing in opposition thereto and the surrogate having upon the return of the citation as aforesaid proceeded to hear the allegations and proof of the parties."

And said decree further recited:

"It having been established to the satisfaction of said surrogate, first, that said petitioner has fully complied with all the requisite provisions of the statute concerning the disposition of decedent's real property for the payment of debts or funeral expenses, and that the proceedings herein have been in conformity to title 5 of chapter 18 of the Code of Civil Procedure."

It was decreed that said real property be sold for the payment of debts.

It does not appear upon whose application the special guardian was appointed, and, although it is recited that an order was made and filed, no such order appears in the record. It is shown that all the parties interested in said real property were duly cited by the affidavits of service, and presumptively by the recital in the decree.

It is provided by section 2473 of the Code of Civil Procedure as follows:

"Where the jurisdiction of a Surrogate's Court to make, in a case specified in the last section, a decree or other determination, is drawn in question collaterally and the necessary parties were duly cited or appeared, the jurisdiction is presumptively, and, in the absence of fraud or collusion, conclusively established, by an allegation of the jurisdictional facts, contained in a written petition or answer duly verified, used in the Surrogate's Court. The fact that the parties were duly cited is presumptively proved by a recital to that effect in the decree."

It is also provided by section 2474 of the Code of Civil Procedure:

"The Surrogate's Court obtains jurisdiction in every case, by the existence of the jurisdictional facts prescribed by statute, and by the citation or appearance of the necessary parties. An objection to a decree or other determination, founded upon an omission therein, or in the papers upon which it was founded, of the recital or proof of any fact necessary to jurisdiction,

which actually existed, or the failure to take any intermediate proceeding, required by law to be taken, is available only upon appeal. But, for the better protection of any party, or other person interested, the Surrogate's Court may, in its discretion allow such a defect to be supplied by amendment."

It is also provided by section 2763 of the Code of Civil Procedure as amended by chapter 750, p. 1911, of the Laws of 1904, as follows:

"The title of a purchaser in good faith at a sale pursuant to a decree made as prescribed in this title is not, nor is the validity of a mortgage or lease made as prescribed in this title, in any way affected where a petition was presented and the proper persons were duly cited and a decree authorizing a mortgage, lease or sale was made as prescribed in this title, by any omission, error, defect, or irregularity occurring between the return of the citation and the making of the decree, except so far as the same would affect the title of a purchaser at a sale made pursuant to the directions contained in a judgment rendered by the Supreme Court."

See section 2784 of the Code of Civil Procedure prior to its repeal by said chapter 750, p. 1907, of the Laws of 1904.

There is sufficient evidence before us to show that the Surrogate's Court had jurisdiction of the persons of the widow and heirs at law of the intestate for the purpose of appointing an administrator, and also for the purpose of making the decree directing the sale of said real property and to confirm the sale. No fraud or collusion has been shown in either proceeding, and the same cannot be attacked collaterally. Mott v. Fort Edward Water Works Co., 79 App. Div. 179, 79 N. Y. Supp. 1100; Van Gaasbeek v. Staples, 85 App. Div. 271, 83 N. Y. Supp. 225; Bolton v. Schriever, 135 N. Y. 65, 31 N. E. 1001, 18 L. R. A. 242; Roderigas v. East River Sav. Bank, 63 N. Y. 460, 20 Am. Rep. 555; O'Connor v. Huggins, 113 N. Y. 511, 21 N. E. 184; Taylor v. Syme, 17 App. Div. 517, 45 N. Y. Supp. 707; Hoes v. N. Y., N. H. & H. R. R. Co., 173 N. Y. 435, 66 N. E. 119; Sisco v. Martin, 61 App. Div. 502, 70 N. Y. Supp. 597. An omission to appoint a guardian ad litem in an action or proceeding where process has been duly served does not make a judgment or decree void, but voidable only. McMurray v. McMurray, 66 N. Y. 175; Fox v. Fee, 24 App. Div. 314, 49 N. Y. Supp. 292.

Appellant's counsel insists that he was not allowed to show in the trial court that the proceedings in the Surrogate's Court were fraudulent and void. He was counsel for the widow in the proceeding for the appointment of an administrator of the intestate, and also in the proceeding for the sale of his real estate for the payment of his debts, and made no objections to the proceedings or the decree that was granted in each proceeding. On the trial of this action he made a general offer to show that the proceedings in Surrogate's Court were fraudulent and void, to which general offer the court said, "The offer I do not entertain." He did not offer evidence in any way relating thereto. If he had done so, it is to be presumed that the court would have received it. The widow was not at the time of the sale interested in the fee of the real property, and it is unnecessary in this case to pass upon any question relating to her dower or other rights in the property. The appellant's counsel, following the offer to show that the proceedings in the Surrogate's Court were fraudulent and void, made a further offer

as follows: "I offer to prove by each one of the heirs of Wm. H. Blood that they had no papers in these proceedings to sell the real estate served upon them; no notice, as required by section 2531 of the Code of Civil procedure; and that they never personally appeared in court." To which the court said: "That is a very broad offer. You might have something you could prove." The appellant's counsel replied, "They will ·claim that the infants have waived." The respondents' counsel then said, "We do not claim that any of the heirs of Blood have waived anything." No further offer was made by the appellant's counsel, and no evidence was offered by appellant relating to her alleged claim. There is nothing before this court requiring our consideration of the questions about which the appellant's offers were made.

It is further claimed by the appellant that the Surrogate's Court never had jurisdiction of the subject-matter of the proceedings for the sale of said real property, for the reason that the real property was purchased by the intestate with pension money, and that it is exempt from sale for the payment of intestate's debts by section 1393 of the Code of Civil Procedure, and that under section 2749 of.the Code of Civil Procedure no authority is given to the Surrogate's Court to entertain a proceeding for the sale of such real property for the payment of intestate's debts. The real property of which a decedent died seised is subject to be disposed of for the payment of his debts and funeral expenses as prescribed in chapter 18, tit. 5, of the Code of Civil Procedure, "except where it is devised expressly charged with the payment of debts or funeral expenses or is exempted from levy and sale by virtue of an execution as prescribed in title second of chapter thirteen of this act." Code Civ. Proc. § 2749. The only express exemptions of real property from levy and sale by virtue of an execution prescribed by title 2 of chapter 13 of the Code of Civil Procedure are: First. A seat or pew occupied by the judgment debtor or the family in a place of public worship. Such interest, although in perpetuity, is a limited and usufructuary one, and is enumerated in the statute as personal property. Code Civ. Proc. § 1390. Second. Lands set apart as a family or private burying ground, when designated as prescribed by law to exempt the same. Code Civ. Proc. §§ 1395, 1396. Third. A lot of land, with one or more buildings thereon not exceeding in value $1,000, and designated by law as an exempt homestead. Code Civ. Proc. §§ 1397, 1399. By section 1393 of the Code of Civil Procedure there is no express exemption of real property from levy and sale by virtue of an execution. That section of the Code in terms exempts a pension granted to a person in the military service of the United States and certain equipments. The federal government, by which the decedent's pension was granted, protects the pension money until it reaches the pensioner, or his family in case of his death. Its protecting care extends no further, and such money becomes general assets in the hands of the person or persons receiving it. Prior to the decision of the case of Yates County National Bank v. Carpenter, as reported in 119 N. Y. 550, 23 N. E. 1108, 7 L. R. A. 557, 16·Am. St. Rep. 855, it was quite uniformly

held in this state that the exemptions from levy and sale by virtue of an execution as stated in section 1393 of the Code of Civil Procedure did not extend to property, real or personal, purchased by the pensioner with the pension money. By the decision in Yates County National Bank v. Carpenter, supra, it was held that, where pension money can be directly traced to the purchase of property necessary or convenient for the support and maintenance of the pensioner and his family, such property is exempt. Apart from exemptions, property of which a person dies the owner is subject to the payment of his debts. Exemptions of property from levy and sale by virtue of an execution do not run with the property exempted, and are not incidents thereof, but are personal favors to the person exempted. The statutes provide what property shall be deemed assets of a decedent to be inventoried, and what property shall be set apart to a widow and the infant children of a deceased person; and real property, unless devised, descends to the heirs at law of the deceased. That it was not the intention of the Legislature to extend the exemptions of property purchased by pension money beyond the life of the pensioner is reasonably certain from the fact that it is not so stated in the statute, and for the further reason that no provision is made for protecting a bona fide purchaser of the property from a stale claim of such exemptions as in the case now under consideration. Express provision is made for a record in the office of the clerk or register of the county of lands set apart as a family or private burying ground, and for a record of exempt homesteads in a book kept for that purpose, and styled the "Homestead Exemptions Book." By section 1400 of the Code of Civil Procedure it is also provided when the exemptions of a homestead shall continue after the owner's death, and the extent thereof. If we should hold that real property purchased with pension money remains exempt for the benefit of the widow and infant children after the death of the pensioner, what limit shall be placed upon such exemptions? Would the exemptions cease at the death of the widow and on the children arriving at the age of 21 years? If it is the intention of the Legislature to extend exemptions of real property purchased with pension money beyond the death of the pensioner, it should be so expressly stated, and provision should be made for giving notice thereof. We are of the opinion that the real property of the decedent in this case was not, at the time of the filing of the petition, exempt from levy and sale by virtue of an execution, and that the Surrogate's Court had jurisdiction of the subject-matter of the proceeding. Matter of Liddle, 35 Misc. Rep. 173, 71 N. Y. Supp. 474; Beecher v. Barber, 6 Dem. Sur. 129.

We are also of the opinion that the heirs at law of the decedent should not now be allowed to assert the exemption even if said section 1393 is construed to include an exemption extending beyond the death of the pensioner. The exemption, in any event, is not specific and absolute, but dependent upon a determination that the real property was purchased with pension money. It is necessary to determine such fact in the proceeding. The jurisdiction of the Surrogate's Court is dependent upon many facts, such as the ex-

istence of unpaid debts against the decedent, which must be determined by the court. Farrington v. King, 1 Brad. Sur. 182. It is important for the protection of innocent purchasers and the security of titles to real property that, if exemptions may extend beyond the life of a pensioner, the fact upon which such exemption depends be determined at the earliest possible moment, and in the first proceeding relating thereto when such exemption can be asserted. It has been determined by a court having jurisdiction of the persons of the heirs at law of the decedent that the real property in question was subject to sale by virtue of title 5 of chapter 18 of the Code of Civil Procedure. The widow and heirs at law had an opportunity to assert the claimed exemption, and failed to do so, and an innocent purchaser at a public sale pursuant to a decree of the court has accepted and paid for a deed thereof, and the parties to the proceeding should not now, in a collateral action, be allowed to deny his title.

The judgment and order appealed from should be affirmed, with costs. All concur.