**In re Joyce Irene BONZEY, Debtor.**

**Bankruptcy No. 92–13223.**

United States Bankruptcy Court,
D. Rhode Island.

April 23, 1993.

**106**

Terrence J. Higgins, Warwick, RI, for debtor.

Marc D. Wallick, Wallick & Paolino, Warwick, RI, Chapter 7 Trustee.

1. The remainder of the funds were placed in the Debtor's savings account and have also been claimed as exempt. For reasons unknown to us, the Trustee has voiced no objection as to that claimed exemption, and under Fed.R.Bankr.P. 4003(b) and *Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), the deadline has passed for questioning that $31,000 "item."

## DECISION AND ORDER DENYING DEBTOR'S CLAIM OF EXEMPT PROPERTY

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on January 28, 1993 on the Chapter 7 Trustee's Objection to a claim of exempt property filed by the Debtor, Joyce Bonzey. At issue is Bonzey's claimed exemption of a 1992 Pontiac automobile which was purchased with proceeds traceable to her workers' compensation benefits. The Debtor contends that R.I.Gen.Laws § 28-33-27 authorizes such an exemption, while the Trustee argues that the exemption ended when Bonzey received a lump sum compensation payment for her work-related injury.

### FACTS

In 1990 Joyce Bonzey sustained a back injury at work, and said injury was determined to be compensable under Rhode Island workers' compensation law. In September 1992, her injury claim was settled and the Workers' Compensation Commission approved a $46,000 lump sum payment to compensate Bonzey in full for her injuries. She used approximately $15,000 of the settlement proceeds to purchase the automobile in question.[1]

On November 12, 1992 Bonzey filed the instant petition, and elected Rhode Island state exemptions, as she is entitled to do, pursuant to 11 U.S.C. § 522(b)(2). As part of her State exemptions, the Debtor claims the automobile under R.I.Gen.Laws § 28-33-27. The Chapter 7 Trustee objects to the Debtor's claim of exemption in the automobile.[2]

### DISCUSSION

The Rhode Island statute upon which the Debtor relies in claiming her car as exempt, provides in pertinent part:

2. The Trustee also objected to the Debtor's claim of a $300 jewelry exemption. The Debtor now concedes that her jewelry does not qualify as "wearing apparel" and has withdrawn her claim of exemption as to these items.

Immunity of claims from assignment or liability for debt.—

(a) No claims or payments *due* for compensation under chapters 29–38, inclusive, of this title or under any alternative scheme permitted by §§ 28–29–22–28–29–24, inclusive, shall be assignable, or subject to attachment, or liable in any way for any debts....

R.I.Gen.Laws § 28–33–27 (emphasis added). The Debtor contends that this section also protects against the attachment of property purchased with funds which are traceable to workers' compensation benefits. In support of this argument, the Debtor cites to *Cardenas v. Cardenas*, 478 A.2d 968 (R.I.1984), wherein the Rhode Island Supreme Court held, "[it] is unquestionably the law of this jurisdiction that workers' compensation payments are exempt from claims of ordinary creditors and legal process in implementation of the claims of such creditors." *Cardenas*, 478 A.2d at 970.

Our task today is to determine whether this state statute continues to protect such benefits from the claims of creditors *after* the proceeds are paid to the injured employee. Upon consideration of the unambiguous language in R.I.Gen.Laws § 28–33–27, we conclude that it does not.

■■■ Our research has uncovered no Rhode Island case addressing this issue, and the discussion in *Cardenas*, 478 A.2d 968, sheds little light on the question, since the facts are different from those in the instant case.[3] While we appreciate the intent of this type of employee protective legislation, and recognize that when it is vague and/or ambiguous the Workers' Compensation Act should be liberally construed in favor of the injured employee, we are also bound, where the statutory language is plain and unequivocal, to apply it as written. "If the language is clear on its face, then the plain meaning of the statute must be given effect." *Gilbane Co. v. Poulas*, 576 A.2d 1195, 1196 (R.I.1990). With that mandate, we find the phrase "claims or payments due for compensation" to mean that the legislative intent was to exempt *claims* of injured workers *only* during the period *before* said claims are actually paid to the claimant. If the drafters also intended to exempt *the proceeds* of workers compensation claims after payment, they could easily have said so. *See Greater Providence Deposit Corp. v. Barnacle (In re Barnacle)*, 623 A.2d 445 (R.I.1993).

Examples of statutes which clearly provide for the exemption of money or property *after* its receipt by the person entitled thereto, are Bankruptcy Code § 522(d)(11), and the Uniform Exemptions Act §§ 6(A)(1) and 9(b). These statutes specifically provide that an exemption continues in items that are traceable to the original proceeds.[4] Our reading of R.I.Gen.Laws § 28–33–27 does not allow a similar conclusion here. To the contrary, once the injured claimant received her lump sum payment of workers' compensation benefits, the protection previously afforded under § 28–33–27 ended, pursuant to the terms of the statute.

Although today's decision treats the Debtor harshly, when faced with as clear and unambiguous a statute as that presented here, any other interpretation would constitute an improper judicial modification of legislative intention, and although other courts have allowed the exemption to sur-

---

**3.** *Cardenas* is different in that the funds did not reach the injured party's hand before his ex-wife sought to attach the money for past due child support obligations. *Id.* at 968–69.

**4.** The Uniform Exemptions Act reads in pertinent part:

§ 6. Property Exempt to Extent Reasonably Necessary for Support.

(a) An individual is entitled to exemption of the following property to the extent reasonably necessary for the support of him and his dependents:

(1) benefits *paid or payable* by reason of disability, illness, or unemployment. (emphasis added.)

§ 9. Tracing Exempt Property.

. . . . .

(b) Money or other property exempt ... to the extent reasonably necessary for support under section 6, remains exempt after its receipt by, and while it is in the possession of, the individual or in any other form into which it is traceable, for example, in a bank or savings account.

vive after payment to the injured employee,[5] we will continue to adhere to the rule that when a statute is unambiguous on its face, our judicial inquiry ends. *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984); *Laracuente v. Chase Manhattan Bank,* 891 F.2d 17, 23 (1st Cir.1989).

Accordingly, we conclude that the Debtor's claimed exemption (in her automobile) does not qualify under R.I.Gen.Laws § 28–33–27, and that the Trustee's Objection to said exemption is SUSTAINED.

Enter Judgment consistent with this opinion.

## APPENDIX A

*Surace v. Danna,* 248 N.Y. 18, 161 N.E. 315 (1928) (O'Brien, J., dissenting), in pertinent part:

No property is exempt from execution unless some statute makes it so, and the burden is upon the person claiming exemption to bring his property within some statutory exception. *Baker v. Brintnall,* 52 Barb. 188. The question whether any one shall receive the privilege of escaping payment of a debt is one of policy and, therefore, one essentially for legislative action. The lawmaking body has seen fit to continue to impose upon one recovering a judgment in an action for personal injuries the duty to discharge his pecuniary obligations to those who have trusted him. It may relieve him of that duty just as it may lighten the financial burdens of one obtaining compensation under the Workmen's Compensation Law. We ought not to hold that the Legislature has done so in either case unless its language clearly indicates such an intention.

I can read in the act no such legislative purpose. The compensation and benefits which are exempt are only those which are 'due.' *The statute does not deal with those which have been paid.* Compensation and benefits which are due are not merely made free from claims of all kinds; the workman himself is forbidden to assign them or to waive his exemption from execution. We would have to go to extraordinary lengths before we could hold that the statute purposes to prevent any one from assigning compensation after it has been paid to him. How could an injured workman support himself, if he were prohibited from assigning his own money and if his creditors could not compel him to pay what he owes them? Clearly, to my mind, this section forbids assignments and waivers of exemption from execution only so long as the money remains in the custody of the state or the employer. This idea is reinforced by the last sentence in that part of the section above quoted: 'Compensation and benefits shall be paid only to employees or their dependents,' and the further provision in section 33 directing, in case of the death of an injured employee to whom any compensation was 'due' at the time of his death, that such compensation shall be 'payable' to certain designated relatives. All through section 33 the word 'due' seems to mean 'payable.' Compensation can no longer be due or payable after it has been paid. The purpose of section 33 impresses me as directing a mode of procedure by which the state or the employer may be enabled to get rid of compensation, which is due and payable, simply by paying it over to the person to whom it has been awarded or to whom it is payable under the statute. The agent, public or private, who makes the disbursement shall not be harassed or obstructed by the imposition of a duty to determine at his peril the validity of assignments, third party orders, executions or any kind of document purporting

5. *See In re Fraley,* 148 B.R. 635 (Bankr.M.D.Fla. 1992); *Waldman v. Nolen (In re Nolen),* 65 B.R. 1014 (Bankr.D.N.M.1986); *Surace v. Danna,* 248 N.Y. 18, 161 N.E. 315 (1928). After reading and re-reading *Surace,* which was authored for the majority in his incomparable style by Justice Cardozo, upholding the exemption, we remain persuaded nevertheless by the dissenting opinion of a less renowned colleague of Justice Cardozo. The pertinent text of that dissent by O'Brien, J., attached hereto as Appendix A, is included, almost in its entirety, as it expresses this Court's view on the subject, but much more clearly than we would have been able to articulate.

to constitute legal process. He is not to be turned into a stakeholder, but is to be a disbursing agent, and nothing else. After his function as such has been discharged, the beneficiary may do with his compensation as he wills. The money belongs to him and in the absence of a clear statute of exemption, it is, like other property, subject to execution. This policy may not embody such humanity and benevolence as we may think the state ought to dispense to the victims of industrial casualties. The Legislature is free to change its present policy. Our duty is to interpret the law as we find it.

In this statute, the word 'due' is, I think, used by the Legislature in the sense in which that and cognate words have been defined by the courts. In *Bull v. Case*, 165 N.Y. 578, 59 N.E. 301, we decided that the section of the Insurance Law (Consol.Laws. c. 28) which provides that 'all money or other benefit, charity, relief or aid to be paid, ... shall not be liable to be seized, taken or appropriated' (section 238) does not include the case of money after it has been paid. The act of Congress (R.S. s 4747) which directs that 'no sum of money due or to become due, to any pensioner, shall be liable to attachment, levy, or seizure' has been held to protect pension moneys only until they have been paid. *McIntosh v. Aubrey*, 185 U.S. 122, 22 S.Ct. 561, 46 L.Ed. 834; *Smith v. Blood*, 106 App.Div. 317, 324, 94 N.Y.S. 667, 672, per Chase, J. Our decision in *Yates County Nat. Bank v. Carpenter*, 119 N.Y. 550, 23 N.E. 1108, 7 L.R.A. 557, 16 Am.St.Rep. 855, does not, it seems to me, announce any essentially different doctrine. In that case we construed a statute which provided that:

'A pension heretofore or hereafter granted by the United States ... for military ... services ... is also exempt from levy and sale by virtue of an execution, and from seizure for non-payment of taxes, or in any other legal proceeding.' Civil Practice Act, s 667.

That statute plainly exempted the pension not only before but also after the money had reached the beneficiary. Property purchased with pension money and necessary for the pensioner's maintenance is the equivalent of and represents the pension. That is the theory upon which that case was decided. No one pretended that, under the statute, the pension money itself, even after it had been paid to the beneficiary, could be seized or levied upon. Therein lies the vital distinction between this and the *Carpenter* Case. The authority of that decision has, moreover, been shaken by the opinion of the Supreme Court of the United States in *McIntosh v. Aubrey*, *supra*.

*Id.* at 317–318 (emphasis added).