MRS. MAMIE G. MIXON ET AL. V. JAMES G. MIXON, ADMINISTRATOR OF MRS. MARCELLA EBORN AND WILLIAM R. EBORN.

(Filed 23 November, 1932.)

1. **Insurance N a—Upon death of beneficiary of War Risk Insurance heirs of soldier are to be determined as of date of his death.**

After the death of a soldier insured under the provisions of the Federal War Risk Insurance Act and the death of the beneficiary named in the policy, the commuted value of the remaining installments is payable to the administrator of the deceased soldier as personalty belonging to his estate to be distributed among his heirs at law under the statute of distribution, such heirs to be determined as of the date of the death of the deceased soldier and not as of the date of the death of the beneficiary.

2. **Same—Proceeds of War Risk Insurance in hands of administrator of deceased soldier are not subject to debts of distributees.**

Where after the death of a soldier insured under the provisions of the War Risk Insurance Act his mother, as the beneficiary named in the policy, receives the monthly installments from the policy until her death, and the commuted value of the remaining installments are then paid to his administrator: *Held*, the funds in the administrator's hands are not subject to the debts of the deceased soldier nor of the distributees under the Federal Act, and neither the creditors of the mother's nor the father's estate are entitled to payment out of the funds as against the brothers and sisters of the deceased soldier who are his heirs at law and the distributees of the funds, no payment having been made to any distributee of the estate of the deceased soldier. But after the distribution of the funds in accordance with the statute the funds in the hands of the distributees would be subject to their debts.

3. **Same—War Insurance Act will be liberally construed to exempt proceeds of policies from claims of creditors.**

The World War Veteran's Act and the amendments thereto will be liberally construed to effectuate the intent of the act to provide for American soldiers and their dependents and to exempt the proceeds of the policies from the claims of creditors. 454 title 38 U. S. C. A.

CIVIL ACTION, before *Parker, J.*, at October Term, 1932, of BEAUFORT.

The agreed facts are as follows: "1. That William R. Eborn, a sailor in the United States Navy, during the late war, received a certificate of insurance on his life, issued by the United States, through the Bureau of War Risk Insurance. His mother, Mrs. Marcella Eborn, was named as beneficiary. He died intestate, and having never married, 22 October, 1918, a resident of Beaufort County, North Carolina, leaving him surviving, his father, W. S. D. Eborn, his mother, Mrs. Marcella Eborn, also the plaintiffs herein, his brothers and sisters.

2. On 30 October, 1926, W. S. D. Eborn, father of the deceased veteran, died leaving a will and naming his wife as his executrix and sole devisee. On 12 June, 1932, Mrs. Marcella Eborn, mother of deceased veteran, died intestate, and James G. Mixon was appointed administrator of her estate, she having received monthly installments of $57.50 per month from 22 October, 1918, to 21 June, 1932, the remaining installments, that she would have received, had she lived, in the amount of $3,932, has been awarded and paid to, and is now in the hands of James G. Mixon, administrator of the estate of William R. Eborn, under section 303, World War Veteran's Act and amendments thereto, to be distributed to heirs or next of kin of the deceased veteran under the statute of distributions of the State of North Carolina.

3. That the creditors of W. S. D. Eborn, and Mrs. Marcella Eborn, father and mother respectively, of the veteran, are claiming that the debts of W. S. D. Eborn and Mrs. Marcella Eborn, father and mother of veteran, should be paid by the administrator of the veteran's estate, out of the award heretofore referred to.

4. That your petitioners, the plaintiffs herein, are brothers and sisters of the deceased veteran, and under the statute of distributions of North Carolina, are the next of kin, of the deceased veteran, since death of the father and mother, and under the statute of descents of North Carolina, are his heirs.

The parties to this proceeding pray the court that their relative rights under the above state of facts be determined and judgment rendered accordingly."

Upon the foregoing facts it was adjudged "that the funds now in the hands of James G. Mixon, as administrator of William R. Eborn, deceased veteran, are not subject to the claims of creditors of W. S. D. Eborn, and Mrs. Marcella Eborn, father and mother respectively, nor either of them, of the deceased veteran. The said James G. Mixon, as such administrator, is hereby ordered to pay to the plaintiffs herein, brothers and sisters of the deceased veteran, the funds in his hands, as administrator of William R. Eborn, deceased, subject to the proper costs and charges of administration, it being adjudged by the court that the creditors of W. S. D. Eborn and Mrs. Marcella Eborn, respectively, are not entitled to participate in the same."

From the foregoing judgment the defendant appealed.

*J. S. Benner for plaintiffs.*
*MacLean & Rodman for defendant.*

BROGDEN, J. Are proceeds of war risk insurance in the hands of the administrator of the dead veteran subject to the claims of creditors of distributees of the dead soldier?

A sharp divergence of judicial opinion is disclosed by the opinions of many appellate courts upon the question as to whether the distributees of war risk insurance of a deceased soldier are to be ascertained at the time of the death of the soldier or at the time of the death of the beneficiary named in the certificate of insurance. Probably the latest utterance upon the subject is contained in the opinion of the Supreme Court of the United States in *Singleton v. Cheek,* 76 L. Ed., p. 308. The Court, referring to the amendment of the World War Veteran's Act in 1925, said: "By that amendment, the rule, which, upon the happening of the contingencies named in the prior acts, limited the benefit of the unpaid installments to persons within the designated class of permittees, was abandoned, and "the estate of the insured" was wholly substituted as the payee. All installments, whether accruing before or after the death of the beneficiary named in the certificate of insurance, as a result, became assets of the estate of the insured upon the instant of his death, to be distributed to the heirs of the insured in accordance with the intestacy laws of the state of his residence, such heirs to be determined as of the date of his death, and not as of the date of the death of the beneficiary. The state courts, with almost entire unanimity, have reached the same conclusion." A complete and comprehensive array of authorities appear in a note appended to the opinion. See *Trust Co. v. Brinkley,* 196 N. C., 40, 144 S. E., 530; *In re Pruden,* 199 N. C., 256, 154 S. E., 7; *Grady v. Holl,* 199 N. C., 666, 155 S. E., 565.

Consequently when William R. Eborn died on 22 October, 1918, his father, W. S. D. Eborn, and his mother, Mrs. Marcella Eborn, were entitled to his personal property under the intestate laws of North Carolina. *In re Pruden,* 199 N. C., 256. However, the mother of the dead soldier, Marcella Eborn, was named as beneficiary in the certificate of insurance, and, as a result, was awarded the monthly installments of $57.50 per month from 22 October, 1918, until her death in June, 1932. After her death the commuted value of the remaining installments, aggregating $3,932, was awarded James G. Mixon, administrator of the estate of the deceased soldier, in accordance with the provisions of the World War Veteran's Act and amendments thereto. Thus the insurance money became an asset of the estate of the deceased soldier. The Court of Appeals of Kentucky in an illuminating opinion by *Drury,* said: "This sum is a part of the personal estate of the soldier, it is payable to and is receivable by his personal representative, and, with the exception of not being subject to his debts, to be administered just like any other personal estate of the soldier, just as any cash he may have had on hand, his choses in action, a flock of sheep, a drove of hogs, a herd of cattle, or a stud of horses." *Mason's Adm's. v. Mason's Guardian,* 39

S. W. (2d), 211. Many adjudicated cases appear in the opinion upon various aspects of the law of war risk insurance.

Therefore, nothing else appearing, the proceeds of war risk insurance, when paid by the Federal Government to "the estate of the insured," would become a general asset of such estate and subject to the claims of creditors. However, the Congress of the United States had a different view and expressed the intention of the lawmakers in the form of a statute, which is section 454, title 38 U. S. C. A. This statute provides that "the insurance . . . payable under parts II, III, and IV respectively, . . . shall not be subject to the claims of creditors of any person to whom an award is made under parts II, III, or IV; . . . such insurance . . . shall be subject to any claim which the United States may have . . . against the person on whose account the . . . insurance . . . is payable." Manifestly, this statute was designed to relieve the "estate of the insured" from liability for debts of the deceased soldier. See *Funk v. Luithle,* 226 N. W., 595, and *Whaley v. Jones,* 149 S. E., 841.

Conceding that the proceeds of war risk insurance are exempt from the claims of creditors of the insured, is such fund exempt from the claims of creditors of the distributee or distributees of such fund under the intestate laws of this State?

An examination of the World War Veteran's Act and the amendments thereto will perhaps disclose that the original idea of this beneficent legislation was to provide for American soldiers and their dependents. Hence a permitted class of beneficiaries was named in the early statutes, including the closest kin of the soldier, thus confirming the view that war risk insurance, as originally conceived, was a sort of special fund to stand guard about the family of the soldier who was offering his blood upon the altar of his country. The same idea is expressed in our statute C. S., 160, which excepts the proceeds of recovery for wrongful death from the claims of creditors. Moreover, section 454, title 38 U. S. C. A. is broad and comprehensive and should doubtless be given a liberal construction in furtherance of the prevailing idea of exemption from the claims of creditors. Furthermore, in the case at bar the original fund or the "insurance" referred to in said section 454 is now in the hands of the administrator. No distributee of the estate of the dead soldier has received a penny of it under the intestate laws. The entire fund is now war risk insurance in the hands of his administrator, and the exemption, created by the Federal statute, from the claims of creditors still rests upon it. Obviously, if any part of the fund had been actually turned over to a distributee or transferred

into his possession, such money would be subject to the debts of the distributee. See *Funk v. Luithle, supra.* The decision of this Court in *Martin v. Guilford County,* 201 N. C., 63, rests upon the fact that the money had actually been received by the person entitled thereto, and invested by him in property subject to taxation. Hence, this decision has no direct bearing upon the question of law involved in this appeal.

Affirmed.