In the Matter of the Estate of LEONARD McCORMICK, Deceased.

Surrogate's Court, Kings County, November 30, 1938.

*Philip V. Manning, Jr.*, for John D. McCormick, as administrator *de bonis non*, petitioner.

*Merchant, Olena & Flagg* [*D. R. Santomenna* of counsel], for the objectant.

WINGATE, S. The research of the court indicates that the most interesting question involved in this proceeding has never been made the subject of any reported decision of this State, and that only in a single instance has it been passed upon in any other jurisdiction.

The decedent, Leonard McCormick, entered the United States military service on June 25, 1918. He died in the line of duty, intestate, on September 28, 1918, slightly over three months later. Prior to his decease he had received from the government of the United States a war risk insurance policy in the sum of $10,000, payable to himself as designated beneficiary. This was the sole asset of his estate. At the time of his death his only next of kin was his father, Edward P. McCormick. The latter received installment payments on the principal sum of the insurance policy up to the time of his death, which occurred on June 15, 1928. The balance of the face of the policy, amounting to $5,969, has been paid by the United States government to the administrator of the deceased veteran and this sum and interest thereon from the date of receipt constitute the sole asset of the estate.

Letters of administration were issued to James J. McCormick on May 23, 1930. The latter died at some undisclosed time and letters of administration *d. b. n.* were issued to the present accountant on June 1, 1932. On April 29, 1931, Catherine A. Lenning presented a claim originally in the sum of $7,410, but now reduced to $6,474, for board, lodging and care alleged to have been furnished to the deceased veteran during the period from 1906 to 1918, inclusive. This was rejected on May 16, 1931.

The present account, with a petition for its judicial settlement, was filed on June 13, 1938. The claimant has appeared and interposed objections thereto by reason of its failure to make provision for the payment of her claim. The present motion by the accountant to dismiss these objections is predicated on two grounds, namely, *first*, that the sole asset of the estate, namely, the proceeds of a United States government war risk insurance policy on the life of the deceased veteran is exempt from the claims of creditors; and, *second*, that the claim here asserted is, in any event, barred by operation of the Statute of Limitations.

The enactments of the Congress of the United States which provided for the issuance of war risk insurance are contained in part III of chapter 10 of title 38 of the United States Code. Title 38 as a whole deals with " Pensions, Bonuses, and Veterans' Relief," and contains comprehensive provisions in favor of the veterans of all military and naval service on behalf of the United States. Chapter 3 covers " Disability or death cause due to Service since March 4, 1861;" chapter 4 relates to navy pensions; chapter 5, to artificial limbs and trusses; chapter 6, to " Civil War, War with Mexico, War of 1812 and Revolutionary War; service and disability pensions of veterans; widows, children, dependent relatives; pensions to army nurses;" chapter 7, to " War with Spain, Philippine insurrection, and Chinese Boxer rebellion; veterans, women nurses, and dependents;" chapter 8, to veterans of the Indian wars; chapter 9, to the army and navy medal of honor roll; chapter 10, to " World War Veterans' relief;" and chapter 11, to " World War Veterans' Adjusted Compensation."

Even a cursory perusal of the various chapters of this title demonstrates the purpose of the people of the United States through their chosen congressional representatives to make awards for the service, and to relieve the necessities, of those individuals whose participation in and with the armed forces of the nation in its several crises and times of trouble enabled it to attain and maintain the position in the world which it occupies today. These provisions in their entirety do not relate to current payments for the services of the primary beneficiaries of the legislation. As the title of the

statutes in which they are found expressly states, they contemplated "Pensions, Bonuses, and Veterans' Relief." They are in the nature of gifts in recognition of benefits conferred by the persons primarily affected by the enactments to the great mass of the citizens of the republic as a whole. This thought pervades all of the provisions of title 38 and is connoted by the three key words, "Pensions, Bonuses, and Veterans' Relief," contained in its title.

As defined in the Standard Dictionary, a "pension" is "A periodic allowance to an individual or to those who represent him, on account of past services or some meritorious work done by him; especially such an allowance made by a government." The meaning of "bonus" is "An allowance in addition to what is usual, current or stipulated." Finally, "relief" signifies the "removal in whole or in part of any evil or hardship that afflicts body or mind; especially, the partial removal of pain, grief, want, care, anxiety, toil, or anything distressing or burdensome, so that some ease is obtained."

An examination of the provisions of chapter 10, relating to World war veterans, demonstrates that its purpose was to accord to those coming within its purview benefits properly falling into all three of the classes of the descriptive words of the title of the main statute of which it forms a part. As noted, the particular subtitle of chapter 10 is "World War Veterans' Relief." The relief thus accorded is subdivided into three general classifications, namely, "Compensation and Treatment," envisaged in part II, "Insurance" in part III, and "Vocational Rehabilitation" in part IV. In respect of all three such additional and gratuitous benefits conferred on World war veterans, the statute as originally enacted provided:

"§ 454. Assignability and exempt status of compensation, insurance, and maintenance and support allowances. The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III or IV; and shall be exempt from all taxation."

That a very real benefit was conferred upon World war veterans by the insurance provisions of the act is demonstrated by the fact that section 511 provided that the entire administrative expense relating to the insurance as well as the excess mortality and disability loss should be borne by the United States government itself, thus bringing the policy of insurance within the noted connotation of the term "bonus," while the sums payable upon a

demonstration of the conditioning event of the death of the insured comply with the accepted meanings of a " pension " and " relief " to the recipients.

That the judicial decisions respecting the general immunity from taxation and seizure accorded to the sums paid pursuant to the provisions of chapter 10 have been consonant with the obvious purpose of the law is wholly evident from an examination of the adjudications relative to the subject. Prominent in this regard is the decision of the United States Supreme Court in *Lawrence* v. *Shaw* (300 U. S. 245), which, in reversing the Supreme Court of North Carolina, which had held a bank deposit, the avails of which were derived from payments under the World War Veterans' Act, to be locally taxable, said (at p. 250): " We hold that the immunity from taxation does attach to bank credits of the veteran or his guardian which do not represent or flow from his investments but result from the deposit of the warrants or checks received from the Government when such deposits are made in the ordinary manner so that the proceeds of the collection are subject to draft upon demand for the veteran's use. In order to carry out the intent of the statute, the avails of the government warrants or checks must be deemed exempt until they are expended or invested."

It has similarly been determined that such payments could not properly be employed as the basis for inheritance or estate taxation (*Matter of Geier*, 155 La. 167, 170; 99 So. 26; *Matter of Harris*, 179 Minn. 450, 454; 229 N. W. 781; *Tax Commission* v. *Rife*, 119 Ohio St. 83, 89; 162 N. E. 390; affd., 27 Ohio App. 516, 521; 162 N. E. 398; *Watkins* v. *Hall*, 107 W. Va. 202, 205; 147 S. E. 876) and were exempt from the claims of creditors (*Matter of Ferarazza*, 219 Cal. 668, 672; 28 P. [2d] 670; *Speer* v. *Pierce*, 18 Tenn. App. 351, 354; 77 S. W. [2d] 77), and that bank accounts composed of such funds were exempt from garnishment, whether they were those of the veteran himself (*Wilson* v. *Sawyer*, 177 Ark. 492, 494, 495; 6 S. W. [2d] 825; *Purvis* v. *Walls*, 184 Ark. 887, 890; 44 S. W. [2d] 353), of his guardian (*Derzis* v. *Vafes*, 227 Ala. 471, 472; 150 So. 461), or of his beneficiary (*Payne* v. *Jordan*, 152 Ga. 367, 368; 110 S. E. 4).

In only one respect has any marked difference of opinion arisen in the decisions relative to the interpretation of the law. This concerned the exempt status of such payments when made to the estate of a deceased soldier pursuant to the provisions of section 514 of the act. This section, so far as it possesses present interest, reads as follows:

" § 514. Payment of insurance to estate of deceased beneficiary * * *. If no person within the permitted class be designated as

beneficiary for yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty instalments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly instalments thereafter payable, said value to be computed as of date of last payment made under any existing award."

In respect of this situation, a majority of the State courts had, prior to 1934, determined that the exemption also applied to moneys of this nature paid to the estate of the veteran. (*Mason's Adm'r* v. *Mason's Guardian*, 239 Ky. 208, 210; 39 S. W. [2d] 211; *Matter of Harris*, 179 Minn. 450, 456; 229 N. W. 781; *Tax Commission* v. *Rife*, 119 Ohio St. 83, 89; 162 N. E. 390; *Matter of Geier*, 155 La. 167, 169; 99 So. 26; *Butler* v. *Cantley*, 226 Mo. App. 1047, 1052; 47 S. W. [2d] 258; *Hunt* v. *Slagle*, 45 Ga. App. 470; 165 S. E. 287. See, also, *Nixon* v. *Nixon*, 203 N. C. 566; 166 S. E. 516; *Brown* v. *United States*, 65 F. [2d] 65. *Contra, Funk* v. *Luithle*, 58 N. D. 416; 226 N. W. 595; *First Nat. Bank of Horse Cave* v. *Cann's Ex'r*, 247 Ky. 618; 57 S. W. [2d] 461; *Matter of Ryan*, 129 Misc. 248, 249; affd., 220 App. Div. 835.)

Since section 454, hereinbefore quoted, expressly declared that " The * * * insurance * * * payable under Parts * * * III " of the law " shall not be subject to the claims of creditors of any person to whom an award is made under Parts * * * III," this court, had the question been submitted to it as a matter of first impression, would unquestionably have concurred in the result of the majority of the courts of the nation. That in so doing it would have been wrong by the application of *force majeure* is demonstrated by the determination of the United States Supreme Court in *Pagel* v. *Pagel* (291 U. S. 473), decided on March 5, 1934, which, construing the meaning of section 454, held that such payments when made to the estate of the deceased veteran, were subject to the claims of his creditors, saying (at p. 476): " The language of the statute limits the exemption to ' any person to whom an award is made.' It is clear that the statute does not extend the exemption beyond the insured and beneficiary."

The claimant in the present proceeding joyfully seizes upon this decision as determinative of the propriety of her present position. She, however, overlooks the fact that section 454, which was there the subject of interpretation, was repealed at the immediately succeeding session of the Congress, and a new and broader section enacted in its stead (49 U. S. Stat. at Large, 609, chap. 510, § 3, passed August 12, 1935) which reads as follows:

" § 454a. Assignability and exempt status of payments of benefits. Payments of benefits due or to become due shall not be assignable, and such payments made to, or *on account of,* a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process, whatever, either before or after receipt by the beneficiary." (Italics not in original.)

Since it is thoroughly established that amendments to the Veteran Relief acts are effective retroactively (*Singleton* v. *Cheek,* 284 U. S. 493, 497; *White* v. *United States,* 270 id. 175, 180), even though enacted after the death of the soldier (*Gilman* v. *United States,* 290 Fed. 614, 616; affd., 294 id. 422; *Madden* v. *United States,* 18 F. Supp. 534, 536), it is obvious that the question of the exempt status of the insurance proceeds in the present estate is determinable upon an interpretation of section 454a, and, since its language is materially different from that of section 454, which was the subject-matter of the construction in *Pagel* v. *Pagel,* the latter is not a pertinent precedent.

So far as the research of the court has disclosed, the new section has been made the subject of judicial comment on only two occasions. In *Matter of Bollow* (223 Wis. 262, 269; 270 N. W. 82), the court in a perfunctory and somewhat unsatisfactory opinion, expresses its view that the enactment was nugatory so far as any alteration in the law was concerned. In *Culp* v. *Webster* ([Cal. App.] 70 P. [2d] 273, 275), decided by the Appellate Department of the Superior Court of Los Angeles County, California, there is a dictum to the effect that section 454a creates an exemption of proceeds in favor of " Veterans, their children, widows and *estates."* (Italics not in original.)

In view of this complete absence of controlling authority, it becomes the duty of this court to consider the question *de novo.*

It is a basic principle of statutory construction, of universal acceptance, that a statute is to be interpreted in the light of its history and apparent purpose. (*People* v. *Stephens,* 71 N. Y. 527, 537; *Matter of Hamlin,* 226 id. 407, 414; *Archer* v. *Equitable Life Assurance Soc.,* 218 id. 18, 22; *City Bank Farmers' Trust Co.* v. *New York Central R. R. Co.,* 253 id. 49; *People* v. *Ryan,* 274 id. 149, 152; *People* v. *Koch,* 250 App. Div. 623, 625; *Matter of Greenberg,* 141 Misc. 874, 881; affd., 236 App. Div. 733; affd., 261 N. Y. 474; *Matter of Davison,* 137 Misc. 852, 856, 857; affd., 236 App. Div. 684.)

In this connection it was the obvious purpose of the Congress in the initial enactment of the laws now contained in chapter 10 of title 38 of the United States Code to make comprehensive provision

for the veterans of the World war and for those persons in whom they were interested by reason of ties of blood and marriage. As was said by Judge BROGDEN of the Supreme Court of North Carolina in *Mixon* v. *Mixon* (203 N. C. 566, 569; 166 S. E. 516): "war risk insurance, as originally conceived, was a sort of special fund to stand guard about the family of the soldier who was offering his blood upon the altar of his country." It was a tribute of gratitude bestowed by and at the expense of the entire body of the citizenry of the United States. The gratitude was due to and the benefits were conferred by reason of the acts of the individual veterans. The natural supposition, therefore, is that the representatives of the people who made provision for their payment were solely interested in seeing to it that such benefits should reach those dependents and relatives of the veteran whom he, himself, would have preferred to receive them. The act, as a whole, unquestionably accomplished this wish. A situation was, however, possible in which the veteran had no dependents or immediate relatives. In such a situation the motive for the conferring of the benefit could not be deemed altered. It must still be to recompense the veteran himself for his sacrifice by bestowing a tangible return upon those to whom he would wish it given. In the absence of express statement in this regard, such recipients are determinable only in accordance with the usual inclinations of mankind, which is precisely what the statutes of intestate distribution represent. (*Matter of Weissmann*, 137 Misc. 113, 116; affd., on opinion of this court, 232 App. Div. 698; *Matter of Williams*, 162 Misc. 507, 509; affd., 254 App. Div. 741; *Matter of Montgomery*, 166 Misc. 347, 355; *Matter of Anonymous*, 165 id. 62, 63; *Matter of Shupack*, 158 id. 873, 877; *Matter of Smallman*, 141 id. 796, 798.) No inference may be indulged that the veteran would wish to have this benefit transferred to a creditor in preference to a person of his own blood, or that the people of the United States as a whole would wish to have their tax payments diverted to the use of a particular variety of creditors who were not entitled to their gratitude and had made no sacrifice for the common welfare.

The intention of the Congress to place all of the several varieties of benefit contemplated in the act on the same basis is obvious from a reading of the statute in its entirety. In section 451 it is provided that where the amount payable is not over $1,000, "the Administrator of Veterans' Affairs shall allow and pay such sum to such person or persons as would under the laws of the State of residence of the decedent be entitled to his personal property in case of intestacy." It would seem an untenable position to urge that if the sum payable were only $1,000, it was the intention of

the Congress to benefit the statutory distributees of the veteran exclusively, whereas, if it were $1,001, that such intention was potentially to exclude them wholly and to benefit, at public expense, the creditors of the veteran.

Even under the provisions of section 454 prior to its repeal, this court must urge that logic and justice supported the position of the majority of the State courts, which is succinctly stated in *Matter of Harris* (179 Minn. 450, 456; 229 N. W. 781) as follows: " This court followed the Ohio, Pennsylvania, and other courts, holding that these insurance payments do not become a part of the estate of a deceased soldier or of his beneficiary; that they do not pass by the intestate laws of this State but go to the next of kin within the designated class by virtue of the contract and Federal law; that the administrator is but a conduit or agent designated to transfer the fund to those entitled thereto; that the Probate Court is appointed to determine who within the permitted class are next of kin and entitled to the fund; and that this is only a matter of procedure for the convenience of the Federal government in disbursing the money." (See, also, *Tax Commission* v. *Rife*, 119 Ohio St. 83, 89; 162 N. E. 390; *Matter of Geier*, 155 La. 167, 169; 99 So. 26; *Butler* v. *Cantley*, 226 Mo. App. 1047, 1052; 47 S. W. [2d] 258.) It is further believed that the award in such a situation should be treated in a manner similar to a recovery in an action for wrongful death, which, although recoverable by the personal representative, is exclusively for the benefit of the statutory distributees of the decedent.

The United States Supreme Court, however, held otherwise, predicating its determination on the language of the act which granted the exemption to " any person to whom an award is made." With as great celerity as the mills of the Congress could grind it out, this language was altered and broadened so as to exempt payments " made * * * *on account of* a beneficiary under any of the laws relating to veterans." The obvious beneficiary under these laws is the veteran himself; it was he who performed the service which the people have chosen to reward. The payment thereof, therefore, no matter to whom made is " made * * * on account of " him, and under the express language of the act, is declared to be exempt.

The pointed alteration of the language seized upon by the Supreme Court in its declaration that the proceeds of the war risk insurance in the hands of a personal representative were not exempt, must be deemed a demonstration of an intention to alter the law as thus declared. (*People ex rel. Sheldon* v. *Board of Appeals*, 234 N. Y. 484, 495; *Matter of Friedman*, 166 Misc. 664, 671.)

So far as the State of New York is concerned, the decision that these moneys are exempt need not be predicated upon the provisions of the Federal statute alone, since section 667 of the Civil Practice Act provides that a " pension or other reward heretofore or hereafter granted by the United States, or by a State, for military or naval services * * * are also exempt from levy and sale by virtue of an execution, and from seizure in any legal proceeding."

That the proceeds of war risk insurance clearly come within the description of " other reward " is obvious and has been fully developed earlier in this discussion. By exemption from seizure is meant that it is not subject to debts. (*Matter of Strohm*, 51 Misc. 481, 482.) It follows that these moneys being clearly identified as resulting from a " reward " for military service awarded by the United States, are not subject to the claims of creditors under the laws of this State, particularly in view of the liberal construction which the courts have uniformly enjoined in respect of veteran exemption acts. (*Yates County Nat. Bank* v. *Carpenter*, 119 N. Y. 550; *Surace* v. *Danna*, 248 id. 18, 24; *Stockwell* v. *National Bank of Malone*, 36 Hun, 583, 585; *Burgett* v. *Fancher*, 35 id. 647, 649; *Benedict* v. *Higgins*, 165 App. Div. 611, 614; *Lind* v. *Miller*, 145 Misc. 477, 478; *Matter of Murray*, 159 id. 865, 866.)

Under ordinary circumstances, in view of the foregoing determination that the sole assets of this estate are exempt, it would be unnecessary to consider the second ground for the motion to dismiss the present objections by reason of the asserted fact that the claim which has been presented is barred by operation of the Statute of Limitations. In view, however, of the possibility of appellate review of this determination and of the fact that the claimant appears to have been misled by certain observations of this court in its opinion in *Matter of May* (160 Misc. 497; affd., 255 App. Div. 31), which were unnecessary for the decision therein, the court deems itself under obligation to discuss the question.

It will be recalled from the earlier *résumé* of stipulated facts that the present claim is predicated on the assertion that the claimant furnished board, lodging and care to the decedent during the years 1906 to 1918. No more precise dates are mentioned, but in view of the conceded fact that the decedent " left for training camp on or about June 25, 1918," this must be taken as the last date of the asserted rendition of such service.

An implied obligation for remuneration by the recipient for the service was raised as each act thereof was performed, and as to each item the right to institute action for recovery would ordinarily become barred under the provisions of section 48 of the Civil Practice Act upon the expiration of six years after its rendering. This is conceded by the claimant by reason of the admission in the

stipulation " that as to the years 1906 to 1911, claim is barred by the Statute of Limitations."

Under ordinary circumstances, the ability to assert any right to recovery on the last item of service, presumably rendered on June 25, 1918, would have expired six years later, namely, in June, 1924. The claimant asserts that this effect was avoided by the facts that the decedent died on September 18, 1918, that letters of administration on his estate were not issued until May 23, 1930, and that the claimant presented her demand within one year thereafter, namely, on April 29, 1931.

This assertion of the claimant is predicated upon the language of section 21 of the Civil Practice Act, which, so far as presently pertinent, reads as follows:

" § 21. Effect of death of person liable. The term of eighteen months after the death within this State of a person against whom a cause of action exists, * * * is not a part of the time limited for the commencement of an action against his executor or administrator. If letters testamentary or letters of administration upon his estate are not issued within this State at least six months before the expiration of the time to bring the action, as extended by the foregoing provision of this section, the term of one year after such letters are issued is not a part of the time limited for the commencement of such an action."

It is her assertion that the last sentence of this section authorizes the institution of an action on such a claim within one year after the issuance of letters, irrespective of the time which may have elapsed between the maturity of the obligation or the death of the obligor and the date of issuance of the letters.

The germ of the present section 21 is found in the Revised Statutes of 1829. It was therein provided in part 3, chapter 8, title 3 (2 R. S. 448), as follows:

" § 8. The term of eighteen months after the death of any testator or intestate, shall not be deemed any part of the time limited by law for the commencement of actions against his executors or administrators.

" § 9. The time which shall have elapsed between the death of any person, and the granting of any letters testamentary or of administration, on his estate, not exceeding six months, and the period of six months after the granting of such letters, shall not be deemed any part of the time limited by any law for the commencement of actions, by executors or administrators."

In addition to these sections, part 3, chapter 4, article 3, contained the following:

" § 26. If any person entitled to bring any action in this article specified, shall die before the expiration of the time herein limited

for the commencement of such suit, if such cause of action shall survive to his representatives, his executor or administrator may, after the expiration of such time, and within one year after such death, commence such action; but not after that period."

It will be observed that the only extension permitted to a claimant was the additional period of eighteen months and that the two six months' periods under section 9, and their combination in section 26, were solely for the benefit of the representatives of the deceased and applied only to situations in which the demand in question had not become barred by lapse of time prior to the death of the decedent.

When the Code of Procedure was adopted in 1848, the original report of the Commission included a section, then numbered 82, which, except for immaterial verbal alterations, corresponded exactly with section 26 above noted. Upon enactment, however, this was numbered section 102, and, in addition, included a converse statement, the entire section reading as follows:

" Death of person entitled before limitation expires.

" Section 102. If a person entitled to bring an action die before the expiration of the time limited for the commencement thereof, and the cause of action survive, an action may be commenced by his representatives, after the expiration of that time, and within one year from his death. If a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, and the cause of action survive, an action may be commenced against his executors or administrator after the expiration of that time, and within one year after the issuing of letters testamentary or of administration."

The notes of the Commission fail to clarify the reason for the amendment of the section as originally drafted by the addition of the second sentence. Its purpose, however, appears clear, namely, to accord to a claimant the same period of grace for the institution of an action allowed to the representatives of the estate, which was one year after the issuance of letters, provided the obligor " die before the expiration of the time limited for the commencement thereof."

The combined effect of section 102 of the Code and of section 8 of part 3, chapter 8, title 3, of the Revised Statutes was declared in *Sanford* v. *Sanford* (62 N. Y. 553), which (at p. 555) reads as follows: " the statute does not commence to run against the representatives of a deceased creditor upon an obligation incurred, or debt becoming due after his decease, until administration is granted upon his estate, there being no cause of action until there is a party capable of suing. * * * In order to put the statute in motion there must not only be a person in esse to sue, but a

person to be sued.  *  *  *  But if the statute has once begun to run in the lifetime of the testator or intestate, it does not cease running during the period which may elapse between his death and the granting of administration upon his estate, and there is an executor or administrator qualified to act except that by the statutes of this State the time of eighteen months after the death of any testator or intestate is not deemed any part of the time limited by law for the commencement of actions against his executors or administrators; and an action may be brought against executors and administrators within one year after the issuing of letters testamentary or administration, if the person against whom an action might have been brought has died before the expiration of the time limited for the commencement thereof.   (2 R. S. 448, § 8; Code, § 102.)   These provisions may extend the time for bringing actions, under peculiar circumstances, for nearly two years and a half.   Eighteen months may be stricken out under the Revised Statutes, and the time extended for any period short of a full year under the Code.   Except as provided by statute, if the time has commenced to run against a cause of action, it will continue to run notwithstanding the intervention of some of the disabilities mentioned in the statute.  *  *  *

"The question then is as to the bulk of the account, and whether the statute had commenced to run during the life of the intestate. If it had, the operation was not suspended by the death of the debtor, except for the eighteen months after such death; and if after deducting that time the full six years had not elapsed, for twelve months after the issuing of letters of administration."

When the old Code of Civil Procedure was enacted in 1876, the two provisions were, in substance, carried into section 403 which was made to read as at present by amendment contained in chapter 542 of the Laws of 1879.

That no alteration in the effect of the enactment from that declared in *Sanford* v. *Sanford* was made has been adjudicated on a number of occasions.   (*Ferrara* v. *O'Hara*, 188 App. Div. 993; *Maxwell* v. *Cottle*, 72 Hun, 529, 531; *Hall* v. *Brennan*, 64 id. 394, 396; *Chapman* v. *Fonda*, 24 id. 130, 131; *Church* v. *Olendorf*, 49 id. 439.) In the last cited case the court observes (at p. 443): "It is only in a case where the letters are not issued six months or more before the expiration of the time (including the eighteen months) within which the action may be brought that the additional year is given. And, therefore, to have entitled the respondent to such additional time the letters must have been issued within six months before the expiration of the time limited for the commencement of such proceeding."

The contention advanced by the claimant in the case at bar is made the subject of express adverse determination in *Chapman* v. *Fonda* (24 Hun, 130) in which the court says (at p. 131):

" Assuming then that the cause of action accrued January 20th, 1872, the ordinary limitation of six years would require that the action be brought on or before January 20, 1878. Section 403, Code of Civil Procedure, says that eighteen months after death are not a part of the time limited. This extends the time to July 20, 1879. Then that same section says that if letters are not issued at least six months before the expiration of the time to bring the action, as extended above, the term of one year after letters are issued is not a part of the time.

" Now, in the present case, letters were not issued *at any time* before the expiration of the time to bring action, but were issued December 20, 1879. The administratrix construes this part of section 403 as applying as well to a case where letters are issued *after* the expiration of the time to bring the action, as to a case where they are issued within six months *prior* to such expiration. That is, the administratrix claims that after six years have expired from the time when the cause of action arose, and eighteen months more, if at any time thereafter, be it twenty years, letters are issued, a creditor has one year thereafter in which to sue. This is to hold that after the limited time has once expired, the issue of letters gives a right of action for one year thereafter. We do not think that this is the true construction, and in this present case, inasmuch as the seven years and six months had expired before letters were issued, we think that the issue of letters did not give further time within which to sue." (Italics in original.)

It follows in the case at bar, that even assuming that the entirety of the claim became a matured obligation only on June 25, 1918, it would have become outlawed seven years and six months thereafter, namely, in December, 1925, since by reason of the fact that letters of administration were not issued prior to that time, the additional extension of one year did not become available. Obviously, therefore, the claim has long since become unenforcible when the proof of claim was filed on April 29, 1931.

The court, therefore, determines that since the sole assets of this estate are exempt both under section 454a of part III of chapter 10 of title 38 of the United States Code and under section 667 of the Civil Practice Act of this State, and because the claim in question was barred by the operation of the pertinent Statutes of Limitation at the time of its presentation, the objections of the respondent to the present account are without merit, and the motion for their dismissal will be granted, with costs.

Enter decree, on notice, in conformity herewith.