[No. 28730. Department Two. December 11, 1942.]

KATHERINE MARIE CALLAHAN, *Respondent,* v. CECIL LEE CALLAHAN, *Appellant.*[1]

*Earl W. Husted,* for appellant.

*Phil G. Warnock,* for respondent.

BEALS, J.—After serving in the United States army during the World War, a considerable portion of his service having been overseas, Cecil Lee Callahan, the defendant in this action, was honorably discharged from the service August 29, 1920. October 16th following, he married plaintiff, Katherine Marie Callahan, in Chicago, Illinois. Later, Mr. and Mrs. Callahan took up their residence in the city of Everett, Wash-

[1] Reported in 131 P. (2d) 731.

ington, and they have since resided in this state. Two children were born to them, Betty and Vivian, Betty, the younger, now nineteen years of age, the elder daughter being married. During the month of August, 1936, Mr. Callahan purchased an improved tract of land in the city of Everett, which the parties occupied with their family as a home.

November 5, 1936, Mrs. Callahan instituted this action, seeking a divorce from her husband, she also asking the custody of the children. Upon trial of the action, an interlocutory decree of divorce was entered, which later became final. The trial court expressly found that the real estate above referred to was owned by the parties as community property. By the interlocutory order, the property was

" . . . awarded to the parties to be held by them in common, the plaintiff and children to have the sole use and occupancy of the dwelling on the premises so long as she shall maintain a home for the children therein and while her custody shall continue and she be not married to some other."

The final decree of divorce, in all things confirming the interlocutory order, was entered September 4, 1937. May 26, 1938, an order was entered restraining Mr. Callahan from visiting the premises which Mrs. Callahan and the children were then occupying, restraining Mrs. Callahan from cutting trees or making alterations in the building, and permitting her to rent a portion of the dwelling.

The question now before us concerns Mr. Callahan's claim that the real estate belongs to him, and that his former wife should be excluded from all interest therein.

In May, 1941, Mrs. Callahan ceased to reside upon the premises referred to, and moved to Seattle. May 19, 1941, Mr. Callahan filed in the divorce action a

petition entitled "Petition to Restore Property," praying that the interlocutory order of divorce be modified by declaring that he is the sole owner of the real estate above referred to, and that his former wife be decreed to have no title to, or interest in, the property.

Thereafter, Mrs. Callahan filed her petition, asking that she be awarded the property, or, in the alternative, that the same be impressed with a lien in her favor on account of expenditures for taxes and repairs made by her to its benefit. After a hearing, the trial court dismissed Mr. Callahan's petition, and from this order Mr. Callahan has appealed. He will hereafter be referred to as appellant, and Mrs. Callahan as respondent.

Error is assigned upon the dismissal of appellant's petition; upon the refusal of the trial court to enter judgment in his favor; and upon the ruling that the title to the real estate had been adjudicated in the interlocutory order entered in the divorce proceeding.

Respondent's brief contains some reference to a transcript prepared at her order for use on this appeal, but no such transcript appears in the record.

It is apparently conceded that the real estate above referred to, and which is the subject matter of this proceeding, was purchased wholly or principally by appellant with money which he received from the United States government by way of adjusted service in the World War. Appellant contends that for this reason the property has always belonged to him as his separate property, and that in the divorce case the trial court erred in finding that the property belonged to the community composed of appellant and respondent as husband and wife, and in awarding the property to the parties as tenants in common, instead of adjudging the property to be appellant's separate estate.

If we understand correctly appellant's theory, he contends, first, that the property was in its inception his separate estate because purchased with money received as above stated, and that the trial court had no right to find that the land was community property, and that, in any event, when respondent moved away from the property, the ownership thereof should, in some manner, revert to him. As the court, in the order appealed from, dismissed appellant's petition, it was probably deemed unnecessary to refer in the order to respondent's answer to this petition and to the relief which she prayed for in her answer.

Appellant relies upon the following Federal statutes: 38 U. S. C. A., §§ 454a and 686c. By the first section referred to, it is provided that certain payments made to veterans shall not be assignable, shall be exempt from claims of creditors, and that such exemptions extend to property purchased in part or wholly from such moneys. By the second section cited, it is provided that certain benefits paid by the United States to veterans shall not be transferable, assignable, or subject to attachment.

Appellant also cites several decisions in which courts have held that payments by the United States to veterans by way of pensions, adjusted service compensation, war risk insurance, etc., cannot be subjected to certain claims, such as the claim for support by a wife. *Brewer v. Brewer,* 19 Tenn. App. 209, 84 S. W. (2d) 1022; *Yake v. Yake,* 170 Md. 75, 183 Atl. 555; *Riker v. Riker,* 160 Misc. 117, 289 N. Y. Supp. 835; *In re Ballard's Estate,* 161 Misc. 785, 293 N. Y. Supp. 31.

Appellant also cites the case of *Hoerster v. Johnson City State Bank,* 58 S. W. (2d) (Tex. Civ. App.) 142, in which it was held that the proceeds of a loan on an adjusted service compensation certificate were ex-

empt from execution or garnishment, so long as the funds could be traced. In the case cited, the proceeds of a certificate were directly traced to a bank deposit. The court also noted the rule that such Federal statutes as those above referred to should be liberally construed in favor of the veteran. This principle was also noted by the courts in the cases of *Rucker v. Merck,* 172 Ga. 793, 159 S. E. 501; *Atlanta v. Stokes,* 175 Ga. 201, 165 S. E. 270; and *Mixon v. Mixon,* 203 N. C. 566, 166 S. E. 516.

None of the cases cited by appellant is directly in point, and some are very far afield.

The supreme court of the United States, in the case of *McIntosh v. Aubrey,* 185 U. S. 122, 46 L. Ed. 834, 22 S. Ct. 561, held that real estate purchased with pension money was subject to execution and sale at the suit of a creditor of the pensioner.

In the recent case of *Carrier v. Bryant,* 306 U. S. 545, 83 L. Ed. 976, 59 S. Ct. 707, the supreme court held that negotiable notes and United States bonds purchased by a veteran with money received from the United States by way of benefits payable on account of service in the armed forces, were not exempt from execution on a judgment against the veteran. The court cited its opinion in the case of *McIntosh v. Aubrey, supra,* and also in the case of *Trotter v. Tennessee,* 290 U. S. 354, 78 L. Ed. 358, 54 S. Ct. 138, in which it was held that real estate purchased with exempt money was not exempt from taxation.

The supreme court in its opinion also cited *McCurry v. Peek,* 54 Ga. App. 341, 187 S. E. 854, in which it was held that the statutory exemption from levy applying to the payment of benefits by the United States to veterans did not extend to real estate purchased with the money so received.

■ The evidence introduced at the trial of the divorce case between the parties which resulted in the interlocutory order of January 18, 1937, is not before us. In view of the authorities above cited, the trial court may have held that the disposition which it made of the real estate in question, by awarding the same to Mr. and Mrs. Callahan as tenants in common, was amply justified both by the evidence in the case and the law applicable thereto. The court had jurisdiction of the parties and of the subject matter of the action, including the property belonging to the husband and wife jointly, or to either spouse separately. No appeal was taken from the interlocutory order, and in due time a final decree of divorce was entered, in all things confirming and approving the interlocutory order. The interlocutory order did not adjudge that the real estate was community property; it merely awarded the land to the parties as tenants in common.

■ Appellant argues that, because both he and respondent asked that the interlocutory order be modified, the court should have modified the same and granted him the relief which he sought. The fact that both parties to the action requested that the interlocutory order be modified in no way required that the trial court modify the order in any respect. The rights of the parties, in so far as the real estate in question was concerned, had been finally determined long prior to the filing of appellant's petition, from the dismissal of which he has appealed.

The record discloses no ground upon which it may be held that the trial court erred in dismissing appellant's petition, and the order appealed from is affirmed.

ROBINSON, C. J., BLAKE, and SIMPSON, JJ., concur.