McAvoy, J.
The defendant moves to vacate an order here-' tofore obtained by the plaintiff restraining the defendant from withdrawing the sum of $1,250 on deposit in her account in the Workers Trust Company, Johnson City, New York. The defendant argues that such deposit is composed entirely of pension moneys obtained by her deceased husband from the United States Government and that they are therefore exempt from the claims of her creditors under section 667 of the Civil Practice Act and section 454a of title 38 of the United States Code.
Section 667 of the Civil Practice Act, insofar as it is material here, provides as follows: “a * * * pension or other reward heretofore or hereafter granted by the United States, or by a state, for military or naval services * * * are also *1035 exempt from levy and sale by virtue of an execution, and from seizure in any legal proceeding.”
Section 454a of title 38 of the United States Code provides in part as follows: ‘ ‘ Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.”
The plaintiff makes no claim that the moneys in question are not pension moneys but argues that the exemptions referred to in the above-quoted statutes, do not survive the death of the pensioner. The issue thus created here is whether such pension funds are exempt from the claims of creditors after they have passed on to the widow of the deceased pensioner.
We have been unable to find any case in this jurisdiction where the facts presented were precisely the same as in the case at bar. The plaintiff leans rather heavily upon the case of Smith v. Blood (106 App. Div. 317) and there is a strong dictum in that opinion to the effect that the exemptions do not run with property purchased with pension moneys and do not survive the life of the pensioner. In that case the administrator of the pensioner’s estate, shortly after his death brought a proceeding in Surrogate’s Court to sell real property, his only asset, for the payment of his debts. The property was so sold and not until some fourteen years thereafter was any question raised that the property was exempt from the claim of creditors because it had been purchased with pension moneys. The question was then raised for the first time by one of the children in an action in partition. The court there said at pages 325-326: 1 ‘ It is important for the protection of innocent purchasers and the security of titles to real property that, if exemptions may extend beyond the life of a pensioner, the fact upon which such exemption depends be determined at the earliest possible moment and in the first proceeding relating thereto when such exemption can be asserted. * * # The widow and heirs at law had an opportunity to assert the claimed exemption and failed to do so, and an innocent purchaser at a public sale, pursuant to a decree of the court, has accepted and paid for a deed thereof, and the parties to the proceeding should not now in a collateral action be allowed to deny his title.”
It is therefore apparent that the decision in the Smith v. Blood case (supra) did not actually turn upon the precise point that *1036 the exemptions in question do not follow the pension moneys into the hands of the widow and dependents of the pensioner or upon the point that they do not survive his death.
There has been some conflict in the authorities on the extent to which these exemptions apply. In Matter of Liddle (35 Misc. 173) it was held that realty purchased with pension moneys is not exempt from the pensioner’s debts after his death. The same was held in Beecher v. Barber (6 Dem. 129). While the contrary was held in Hodge v. Leaning (2 Dem. 553), Matter of Stevens (261 App. Div. 48) cited by plaintiff, involved a situation where the pensioner had died leaving his widow as his only dependent. The widow then died and her administrators claimed that the assets of her estate consisted of pension moneys and were exempt therefore, from the claims of her creditors. The court held otherwise. However, in the Stevens case (supra) the pensioner had died leaving his widow as his only dependent, and when she died it is obvious that the reason for any exemption was then removed.
Surrogate Wingate in Matter of McCormick (169 Misc. 672), in a very well-reasoned opinion, discusses the subject of exemptions under the Federal and State statutes. At pages 678 and 679, he stated as follows: ‘ ‘ In this connection it was the obvious purpose of the Congress in the initial enactment of the laws now contained in chapter 10 of title 38 of the United States Code to make comprehensive provision for the veterans of the World war and for those persons in whom they were interested by reason of ties of blood and marriage. As was said by Judge Brogden of the Supreme Court of North Carolina in Mixon v. Mixon (203 N. C. 566, 569; 166 S. E. 516): ‘war risk insurance, as originally conceived, was a sort of special fund to stand guard about the family of the soldier who was offering his blood upon the altar of Ms country. ’ It was a tribute of gratitude bestowed by and at the expense of the entire body of the citizenry of the United States. The gratitude was due to and the benefits were conferred by reason of the acts of the individual veterans. The natural supposition, therefore, is that the representatives of the people who made provision for their payment were solely interested in seeing to it that such benefits should reach those dependents and relatives of the veteran whom he, himself, would have preferred to receive them. The act, as a whole, unquestionably accomplished this wish. # * * The intention of the Congress to place all of the several varieties of benefit contemplated in the act on the same basis is obvious from a reading of the statute in its entirety.”
*1037 In the case of Yates Co. Nat. Bank v. Carpenter (119 N. Y. 550, 554) the court there held, with reference to our State statute (then known as section 1393 of the Code of Civil Procedure): “It is quite obvious that such an exemption can produce no beneficial effect, unless it is extended beyond the letter of the act, and given life and force, according to its evident spirit and meaning ” and again at page 555 the court stated: “ The plain purpose of the act was to promote the comfort of the soldier; to secure to him the bounty of the government, free from the claims of creditors, and to insure him and his family a safe, although modest maintenance, so long as their needs required it.” (Italics ours.)
In the case of Matter of Flanagan (31 F. Supp. 402) the court there makes the observation that the purpose of the Federal exemption statute was to protect not only the recipient of the benefits but to afford some degree of security to the family and dependents of such recipient. In the case at bar the defendant was the widow of the pensioner and his sole dependent. Her only means of livelihood are the pension moneys that she and her husband were able to save during his lifetime and the moneys the Government now allots her by reason of the services her deceased husband rendered his country.
After a careful analysis of the statutes, and the authorities construing them, it seems' apparent that it was the intention of the Government, both Federal and State, to protect such pension moneys, not only in the possession of the pensioner, but his widow and immediate dependents as well.
Therefore, the motion of the defendant to vacate the order herein above referred to is granted.