STATE OF OHIO, DEPARTMENT OF PUBLIC WELFARE, APPELLEE, v. WENDT, ADMR., APPELLANT.

(No. 4882—Decided February 16, 1953.)

*Mr. C. William O'Neill,* attorney general, *Mr. Gus Tarian* and *Mr. Richard D. Metcalf,* for appellee.
*Mr. Aubrey A. Wendt,* for appellant.

WISEMAN, P. J. This is an appeal on questions of law from the judgment of the Probate Court of Franklin County, in an action for a declaratory judgment.

The essential facts which are undisputed are alleged in the amended petition, and are epitomized as follows:

It is alleged that Ferdinand T. Koska was honorably discharged from the United States Army on

January 8, 1919.  Sometime after his discharge, Koska applied for and was granted a disability pension. Thereafter, Koska became mentally ill and was admitted to the Columbus State Hospital.  Koska was a patient in this hospital and a ward of the state of Ohio from November 27, 1948, until his death, which occurred October 6, 1950.  He left surviving him one daughter, Ernestine M. Smith.

At the time of his decease Koska had no money or property of any kind other than $1,520.85 accrued pension, which had been withheld during the period of his hospitalization, and which was deposited by the United States Veterans Administration in its ''Fund Due Incompetent Beneficiaries'' account.  After the appointment of the defendant as administrator of the estate of Koska, the defendant applied for and received from the Veterans Administration the $1,520.85, which was deposited by the defendant in his name as administrator in a checking account in a Columbus bank.  Such sum constitutes the entire estate of the decedent.

The Department of Public Welfare presented to the defendant a claim in the amount of $845.59 for the support and maintenance of Koska while confined in the Columbus State Hospital.  The claim was allowed, but the defendant contends that he has no funds available for the payment thereof, contending that the funds in his possession are exempt from all claims of creditors under the provisions of Section 454a, Title 38, U. S. Code.  Plaintiff alleged that the defendant threatens to distribute such fund without paying the claim presented by it, and asked the court to declare the rights of the parties.

To the amended petition of the plaintiff, the defendant filed a motion for judgment on the pleadings. The court overruled the motion and, the defendant

electing not to plead further, the court rendered final judgment in favor of the plaintiff.

Probate Judge McClelland, in the judgment entry, made this finding:

"The court further finds that when the United States Government, through its Veterans Administration, transferred the aforesaid fund to the decedent, such fund passed from the control of the United States Government to the control of the Probate Court having charge of the administration of the estate of the decedent, and that said fund lost its identity as money coming from the United States Government and by coming into the hands of the administrator of the estate of the deceased, it thereby became subject to the payment of the decedent's debts in the order of their preference."

The Probate Court made the following order:

"* * * it is further ordered and adjudged that out of the funds held by the defendant as administrator, said defendant pay to the state of Ohio the sum of eight hundred forty five dollars, fifty nine cents ($845.59) in the order of its preference."

A determination of the question presented requires a construction of certain provisions of the U. S. Code. Section 454a of Title 38, U. S. Code, in part, provides:

"Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

Section 451, of Title 38, provides:

"The amount of the monthly installments of compensation, yearly renewable term insurance, or accrued maintenance and support allowance which has

become payable under the provisions of Titles II, III, or IV hereof, but which has not been paid prior to the death of the person entitled to receive the same, may be payable to the personal representatives of such person, or in the absence of a duly appointed legal representative where the combined amounts payable are $1,000 or less, the director [Administrator of Veterans' Affairs] shall allow and pay such sum to such person or persons as would under the laws of the state of residence of the decedent be entitled to his personal property in case of intestacy: Provided, that in cases where the estate of the decedent would escheat under the laws of the place of his residence, such installments shall not be paid to the estate of the decedent but shall escheat to the United States and shall be credited to the appropriation from which the original award was made.''

The defendant contends that the pension money is exempt from the claims of creditors, and that the fund should be distributed to the daughter of the decedent. The plaintiff contends that under the facts in this case and under a proper construction of the federal statutes, the pension money has lost its identity as pension money, and the exemption of such money from the payment of the claims of creditors has been lost; and, further, that the claim of the Department of Public Welfare should be paid out of such money before distribution to the next of kin of the decedent.

We find no reported case in Ohio and only a few decisions in other jurisdictions, touching this precise question. Defendant has cited several cases involving the proceeds of war-risk insurance policies and adjusted service certificates. These cases furnish no precedent and are not helpful in determining the question before the court. The cases involving the proceeds of war-risk insurance turn on the provisions of the insurance contract between the soldier and the govern-

ment, and the applicable sections of the War Risk Insurance Act, which contain provisions dissimilar to the two sections above quoted, and which we are required to construe. We comment briefly on the cases cited. In *Jones* v. *Price, Admr.* (1929), 107 W. Va., 55, 146 S. E., 890, the widow and children sued the administrator of the insured to recover proceeds of an adjusted service certificate, which the administrator claimed should be used to pay creditors of the estate. The court sustained the contention of the widow, stating that the widow, and not the administrator, was entitled to the proceeds under the express provisions of Section 661, Title 38, U. S. Code, which section expressly provides that such money shall be paid to the dependents of the veteran giving first preference to the widow.

In the case of *In re McCormick's Estate* (1938), 169 Misc., 672, 8 N. Y. Supp. (2d), 179, which involves proceeds from war-risk insurance, payment was made to the administrator, and the court held that under Section 454*a*, Title 38, U. S. Code, the proceeds of war-risk insurance are exempt from the claims of creditors, and that such proceeds should be paid to the beneficiaries designated in the War Risk Insurance Act. The court in *Haley* v. *United States*, 46 F. Supp., 4, modified in 145 F. (2d), 235, which involved proceeds from war-risk insurance, cited with approval the *McCormick case*, and held that the exemption provided in Section 454*a*, extended not only to the veteran himself, but, also, to his estate.

In the case of *In re Estate of Harris,* 179 Minn., 450, 229 N. W., 781, which involved the proceeds of war-risk insurance, the court held that the administrator is simply a conduit to receive such funds, and is required to distribute such funds to the persons entitled thereto under the provisions of Sections 511 to 514, Title 38, U. S. Code, and other related sections of the War Risk Insurance Act. The Court cited with approval

the case of *Tax Commission* v. *Rife,* 119 Ohio St., 83, 162 N. E., 390, which involved war risk insurance proceeds, and quoted from page 90, as follows:

" 'It is reasonable to assume that the purpose of Congress in making the payment to the administrator of the deceased soldier was for the benefit of the government, to relieve the government of the necessity of selecting and determining the next of kin of the deceased soldier to whom payment should be made, and to place his burden upon the administrator appointed in the state of the soldier's residence. The administrator becomes a mere trustee or conduit for the government to make the payments to the persons entitled to the same under the provisions of the federal law. The intestate laws do not operate upon the decedent's property, but are referred to in order to determine who shall take the proceeds of the insurance. Congress had a right to adopt the course of descent prevailing in the state of the residence of the soldier, and the proceeds of the insurance therefore pass under the federal act, the intestate laws of Ohio being adopted as a standard or guide for ascertaining the next of kin to whom payment shall be made.' "

In *Surplus* v. *Remmele* (1949), 194 Misc., 1036, 87 N. Y. Supp. (2d), 651, the pensioner had died, leaving a widow, who attempted to draw from the bank the pension money which the pensioner had accumulated and deposited in the bank. A creditor of the widow sought to restrain the widow from drawing the money from the bank. The court held that the pension money was exempt in the hands of the widow, as against her creditors. The court leaned most strongly on the principle of law applied in war-risk insurance cases. That case can be distinguished from the case at bar on the facts.

In determining the question presented in the war-risk insurance cases, the courts noted, and we must ob-

serve also, that the federal statute expressly provides to whom the proceeds of war risk insurance shall be payable, as follows: "Insurance shall be payable only to a spouse, child, grandchild, parent, brother, sister, uncle, aunt, nephew, niece, brother-in-law, or sister-in-law, or to any or all of them * * *." Section 511, Title 38, U. S. Code.

Other related sections (Sections 512 and 514), which provide that the proceeds under certain conditions shall be payable to the estate must be construed so as to give effect to the mandatory provisions of Section 511, which requires payment to be made to certain designated persons. So, also, the exemption statute (Section 454a) must be construed to give effect to the provisions of Section 511, as it relates to war risk insurance.

However, there is no statute comparable to Section 511, providing to whom the proceeds of pension money is payable, except Section 451. This section expressly provides that accumulated pension money, which is not paid prior to the death of the pensioner, may be payable to his estate, or in the absence of a duly appointed fiduciary of the estate of the pensioner, where the amount payable is $1,000 or less, the veteran's administrator may pay such sum to such person or persons as would, under the laws of the state of residence of the pensioner, be entitled to his personal property in case of intestacy. When a fiduciary is appointed to administer the estate of a pensioner, the federal statute requires payment to be made in every case to such fiduciary, except where the estate would escheat. Authority to make payment to the next of kin of the pensioner is granted only when the amount is $1000 or less and no fiduciary has been appointed. Payment to the fiduciary is not only preferred but required in cases where a fiduciary is appointed. No conditions or limitations attach to such payment. It is easily under-

stood why the statute does not mention creditors. The creditors of an estate are usually numerous and classified as to priority, and to require payment to them by the veteran's administrator would create a difficult administration problem. The statute recognizes a fundamental law in the administration of estates, which gives a creditor the right to compel an administration, if the next of kin fail to act. Consequently, if no administration is opened, the government should not be delayed in making payment, but will make payment to the next of kin under the intestate laws, if the amount involved is $1,000 or less. If the amount involved is more than $1,000, an administration is required and payment can be made only to the fiduciary. This provision is for the benefit of the government, and serves as a safeguard to the government in making payment without undue delay. If Congress intended the pension money to be received and distributed by the fiduciary only for the benefit of the next of kin of the pensioner, we are of the opinion that it would have so provided. The statute does not attempt to control the fund after it is paid to the fiduciary. There is no statutory provision designating persons to whom the pension money is made payable, as in the case of war-risk insurance.

We now discuss briefly several cases cited by the appellee in support of its contention that the pension money paid to the administrator in the instant case lost its identity as pension money, and that the exemption against the claims of creditors no longer obtains. In the case of *In re Lewis' Estate* (1938), 287 Mich., 179, 283 N. W., 21, where a child was confined in a state institution and her estate under guardianship consisted only of pension money received from the United States Government as the child of a veteran, the court held that the state is not barred by Section 454a, Title 38, U. S. Code, from reimburse-

ment out of such pension money for the care and maintenance of the child while confined in a state institution. The court discussed the effect of the amendment to Section 454*a*, effective August 12, 1935, and reasoned that the pension money was intended for the support of the child, and, therefore, in ordering the payment of the claim, it was acting in furtherance of the pension law.

We quote from the opinion, beginning on page 186, as follows:

"Previous to that amendment the exemption did not cover the pension after receipt thereof by the beneficiary. The very purpose of a pension, such as in this case, is to provide support for the beneficiary and, in this proceeding for reimbursement, the state, under the statute, is asking no more than the pension was given to provide. We are not here concerned with actions by creditors seeking to turn the pension to satisfaction of their demands, but only with the question of reimbursement of the state for care and maintenance. Certainly the pension protective law does not intend the fund for the welfare of the beneficiary and then, under restrictions thereof, after receipt by the beneficiary, prevent employment thereof for care and support of the pensioner.

"At the time the guardian of the pension beneficiary received the pension money she was a ward, not only of the Probate Court but, as well, upon her commitment for hospitalization, a ward of the state. The state asks no more than the guardian was, in duty and of necessity, obligated to provide by way of support, care and maintenance of the ward.

"The state, under humanitarian legislation, has assumed the care and maintenance of the insane pension beneficiary and, by statute, has provided means and measures for reimbursement and we do not think that, under such circumstances, Congress intended to con-

sider the state in the class of barred creditors. The exemption in the pension law serves its purpose in holding that in the hands of the guardian and under order of the court, of which the beneficiary is a ward, the money is not exempt from employment in reimbursing the state, under statutory provisions, for the expense of care and maintenance of the ward.

"It seems to be a question without guiding precedent in this jurisdiction and applicable precedent elsewhere has not been brought to our attention."

As will be noted, the court observed that the claimant was not a creditor "seeking to turn the pension to satisfaction of their demands." The court here makes a distinction between the rights of a creditor who has furnished care and maintenance to the decedent as against the rights of other creditors. The claim in the instant case is of the same character as the claim in the cited case.

In the case of *Estate of Buxton* (1944), 246 Wis., 97, 16 N. W. (2d), 399, where the factual situation was similar to that presented in the instant case, it was held that where the assets of the estate of the deceased widow of a civil-war veteran consisted entirely of funds accumulated from the proceeds of a pension paid to the guardian of the deceased widow such assets are not exempt under Section 454a, Title 38, U. S. Code, from a claim of the state for care and maintenance furnished to the deceased while confined in an insane asylum. The state of Wisconsin has enacted a statute exempting such pension money, etc., from execution.

The court, on page 101, *ibid.*, stated the question presented as follows:

"The question is squarely presented, whether funds exempt during the lifetime of the person entitled to them ceased to be exempt upon the death of the person under either the federal or state statute."

In discussing the effect of the provisions of Section 454a, Title 38, U. S. Code, the court, on page 101, *ibid.*, said:

"The purpose of this legislation, both federal and state, is for the protection of the veteran. No reference is made in either statute to the heirs or legatees of the veteran, and nowhere do we find protection for them as against creditors of the deceased. To extend this exemption to the estate of the veteran is to extend it to the heirs or legatees, and if this is done it is difficult, if not impossible, to determine when and where the exemption would cease. An unambiguous statute will not be enlarged by inference or construction."

On page 102, *ibid.*, the court concluded as follows:

"There is nothing in either statute exempting the securities and moneys in question after they become a part of the estate of the deceased veteran. It is considered that none of the assets of this estate is exempt under 38 USCA, sec. 454a * * *."

The case of *In re Application of Citizens Trust Co.*, 227 App. Div., 839, 237 N. Y. Supp., 448, draws a distinction between the rights of creditors furnishing care and maintenance to a veteran as against the rights of other creditors.

In the application of the principle of law laid down in the case of *In re Lewis' Estate, supra*, this court may well hold that since the claim presented in the instant case is for care and maintenance of the veteran, justice and equity would require the payment of the claim in furtherance of the purpose of the federal government to grant pensions to veterans for their support and maintenance. Such a ruling would be sufficient to support the judgment of the trial court, but it would not meet squarely the issue presented.

We approve and follow the rule stated in the *Buxton case, supra*, to wit: The exemption provided in Section 454a, Title 38, upon the death of the pensioner,

where the pension payments are terminated, is not extended to the protection of the heirs or next of kin of the pensioner, as against the rights of the creditors of the pensioner. The statute does not expressly so provide and the court will not enlarge on its provisions by inference or construction. The fund held by the administrator in the instant case will be administered as other assets and distributed under the intestate laws of the state of Ohio.

The judgment of the Probate Court, being in all respects correct, is hereby affirmed.

*Judgment affirmed.*

MILLER and HORNBECK, JJ., concur.